Richardson, Ch. J.,
delivered the opinion of*the court:
This case is founded on a claim transmitted by the Secretary of War under the following section of the Revised Statutes:
“ Sec. 1063. Whenever any claim is made against any Executive Department involving disputed facts or controverted questions of law, where the amount in controversy exceeds three thousand dollars, or where the decision will affect a class of cases, or furnish a precedent for the future action of any Executive Department in the adjustment of a class of cases, without regard to the amount involved in the particular case, or where any authority, right, privilege, or exemption is claimed or denied under the Constitution of the United States, the head of such Department may cause such claim, with all the vouchers, papers, proofs, and documents pertaining thereto, to be transmitted to the Court of Claims, and the same shall be there proceeded in as if originally commenced by the voluntary action of the claimant;
“And the Secretary of the Treasury may, upon the certificate of any Auditor or Comptroller of the Treasury, direct any account, matter, or claim, of the character, amount, or class described in this section, to be transmitted, with all the vouchers, papers, documents, and proofs pertaining thereto, to the said court, for trial and adjudication:
^Provided, That no case shall be referred by any head of a Department unless it belongs to one of the several classes of cases which, by reason of the subject-matter and character, the said court might, under existing laws, take jurisdiction of on such voluntary action of the claimant.”
One defense set up is that the Secretary of War exceeded his authority and the court acquired no jurisdiction through his transmission.
By the above section 1063 the head of an Executive Department may transmit to'this court any claim described therein, but we hold that it must be a live claim; that is, one over which he has jurisdiction, and which has not already been finally disposed of, settled, and become res judicata ox otherwise barred. We so held in Armstrong’s case, decided at the present term.
Were it not so, then all claims finally rejected by the Departments or otherwise barred since the establishment of the Gov- *224 eminent might be opened by simply mating applications to the beads of the Departments against which the claims were made to have them transmitted to this court.
April 16, 1884, the claimant entered into a written contract for wagon transportation in Kansas and the Indian Territory for theWar Department. He performed services in January, and February, 1885, and a question immediately arose whether part of it was to be paid for at contract rates or, as contended by the claimant, upon a quantum meruit, as outside of the contract, which would make it $5,689.14 more than contract price. Under instructions from the Quartermaster-General that the service in question did not come within the terms of the contract, and that the claimant was entitled to an account stated in his favor upon a quantum meruit therefor, the quartermaster in charge gave a voucher for the whole amount claimed, $10,886.26.
This account and the accompanying papers were transmitted to the Treasury Department by the Quartermaster-General with this- statement : “The account is transmitted for the action of the accounting officers of the Treasury, attention being invited to accompanying correspondence as to the rates charged. The amount which may be found due is considered properly payable from appropriation for transportation of the Army for the fiscal year ending June 30,1885.”
June 15, 1885, the Auditor examined the account, and made a certificate that “ there is due the claimant the sum of $4,990.93,” as appears from the statements and vouchers herewith transmitted for the decision of the Second Comptroller of the Treasury thereon.
June 18,1885, the Second Comptroller, then Mr. Maynard, admitted and certified a balance of $5,197.12, and transmitted the same to the War Department.
June 24, 1885, during the term of Secretary Endicott, a requisition was made on the Secretary of the Treasury “to cause a warrant for $5,197.12 to be issued in favor of Charles H. Cotton, Fort Eeno, Ind. T., due on settlement, as per certificate of Second Comptroller, No. 6852, to be charged to “ transportation of Army and its supplies, 1885.”
June 25, 1885, a warrant was made in accordance with said requisition, and a draft for the amount was issued thereon by *225 the Treasurer, which was forwarded to the claimant and collected by him.
In our opinion this action of the Secretary of War in making a requisition for the amount certified by the Second Comptroller was a concurrence in the decision of that oxScer, and a final settlement and disposition of the claim so far as the War Department was concerned. He might have refused to issue a requisition and have transmitted the claim to this court, as was done in the cases of the Delaware River Steamboat Company (5 C. Cls. R., 55) and the Winnisimmet Company (12 O. Cls. R., 319).
But he elected to stand upon the decision of the Second Comptroller, and to settle the same without further, controversy. He thereby confirmed the settlement and lost control and jurisdiction of the claim.
No subsequent action was taken in the War Department until February 28, 1893, when the claimant, by his attorney, made application in writing to the Secretary of War, then Mr. Elkins, asking that “ his claim for transportation into Okla- , homa in the year 1885 be referred to the Court of Claims in pursuance of section 1063 of the Revised Statutes,” and on March 27,1893, the Secretary of War, then Mr. Lament, so transmitted the same.
This was not done until the term of office of one Secretary of War had intervened. More than eight years had elapsed after the claim first accrued, and more than seven years after it had been settled and paid, and the account had been duly received by the Third Auditor as “finally adjusted” and the requisition recorded by him accordiug to the provisions of Revised Statutes, section 283.
• In the meantime the claimant made two applications to the Treasury Department for reconsideration of the decision of the Second Comptroller.
It has repeatedly been held by this court and the Supreme • Court that the final decision of a matter by a public officer is binding upon his successor, and that the right of an incumbent to review a predecessor’s decision extends only to mistakes in matters of fact arising from errors in calculation and to cases of rejected claims in which material evidence is afterward discovered and produced. (Jackson’s Case, 19 C. Cls. R., 504 ; Day’s Case, 21C. Cls. R., 262 ; Rollin & Presbrey’s Case, *226 23 C. Cls. B., 123, and numerous authorities cited in those cases.)
The Secretary of the Treasury issued a circular on the subject July 28,1885, set out at the end of finding v, in which the same doctrine was promulgated as to reopening claims previously decided by the accounting officers. We have always understood that a public officer could open and reconsider any decision made by himself, like a court, on motion for a new trial made at the same term. Whether this circular of the Secretary has any reference to such a case it is not necessary to determine, as that question is not here involved.
The first application for reconsideration was made December 30,1885, while the same Auditor and Comptroller remained in office. January 29, 1886, the Auditor returned the application to the Comptroller, with the following report, more fully set out in finding y.
“No new evidence is offered, and it is not contended that there was any ‘ mistake of fact.’ It is simply argued that the conclusions of the accounting officers were erroneous. Hence I do not perceive that any case for the opening of a settled matter is made out within the rules indicated by the First and Second Comptroller and the Commissioner of Customs in the circular issued by the Secretary of the Treasury July 28,1885. * * * •
“ I see no reason for opening the case and no ground upon which any different conclusion could be arrived at.
“If Mr. Cotton believes that he is aggrieved by the decision of the accounting officers, he is not without remedy, as it is open to him to reach a judicial determination through the Court of Claims.”
February 11, 1886, the Second Comptroller concurred in the opinion of the Auditor and said: “ The claimant’s application for a reconsideration of the case and for a further allowance is therefore denied.”
Another application for reconsideration was filedMay25,1889; after Mr. Maynard, the Comptroller who made the decision, had been succeeded first by Mr. Butler and afterwards by Mr. Gilkeson, but while the same Auditor, Mr. Williams, remained in office. The Auditor made the following report, more fully set out in finding VI:
“ This is the second application for reconsideration, and now, as in the former application, no additional facts are brought *227 to light; but it is merely argued that the conclusions of the accounting officers were incorrect. Mere persistence does not entitle a claimant to repeated trials, ad libitum, of the same issues. I recommend denial of the present application, if Mr. Cotton is really convinced that he has been aggrieved, he is not without remedy, the doors of the Court of Claims being still open to him.”
June 12, 1889, the Comptroller concurred in the action of the Auditor and said:
“ This claim of Charles H. Cotton for wagon transportation in 1884-’8o, amounting to $10,886.26, was recommended by the Third Auditor to this office June 15,1885, for payment in the sum of $4,990.93. The additional sum of $206.19 was allowed by the Comptroller. An application for a rehearing was made Dec. 30,1885, and denied by the Auditor Jan’y 29,1886, which denial was approved by the Comptroller Feb. 11,1886.
“ This second application, dated May 25, 1889, being now also denied by the Auditor in his recommendation of the 7th inst., I concur in said action, and all the papers are herewith returned to the Third Auditor to be tiled.”
It is contended by the claimant’s attorney that the Comp-troller having allowed only part of the claim suspended action on the balance involved in this suit, and neither allowed nor disallowed the same. Thus he argues that the claim was kept alive until it was referred to this court by the Secretary of War, March 27,1893.
The difficulty in the claimant’s position is that both he and the accounting officers treated that which is now claimed as rejected. The claimant twice applied to those officers for reconsideration and twice the Auditor made adverse reports, and the Comptroller decided against him as upon a rejected claim. If it was not rejected in the first instance, it certainly was when the Comptroller denied the claimant’s application for reconsideration, February 11, 1886. At that time this was the only claim in controversy, and the Comptroller’s decision was then upon that alone, in these words : “Application for a reconsideration and for further allowance is therefore denied.” It is doubtful at least, even if the claim was reopened in the Treasury Department, whether such reopening would be of any avail in the War Department unless the same were returned, to the latter, which was not done in this instance.
The defendants contend that the claim was barred by statute before it was sent here. Devised Statutes provide:
*228 u Seo. 1069. Every claim against tbe United States, cognizable by tbe Court of Claims, shall be forever barred unless tbe petition setting forth a statement thereof is filed in tbe court, or transmitted to it by tbe Secretary of tbe Senate or tbe Cleric of the House of Eepresentatives, as provided by law, within six years after tbe claim first accrues: Provided, That tbe claims of married women first accrued during marriage, of persons under tbe age of twenty-one years first accrued during minority, and of idiots, lunatics, insane persons, and persons beyond tbe seas at tbe time tbe claim accrued, entitled to tbe claim, shall not be barred if tbe petition be filed in tbe court or transmitted, as aforesaid, within three years after tbe disability has ceased; but no other disability than those enumerated shall prevent any claim from being barred, nor shall any of tbe said disabilities operate cumulatively.”
This is more than an ordinary statute of limitation, which applies only to tbe remedy, and leaves tbe obligation of tbe contract in foree for some, purposes, as, for instance, to support a mortgage or other security, and which must be pleaded to be availed of (Angelí on Limitations, secs. 22, 285). It forever bars .the claim itself, and need not be pleaded (Finn's Case, 123 U. S., 227, 232; Cape Ann Granite Co. Case, 20 C. Cls. R., 1, 17).
Tbe claimant seeks to avoid tbe effect of this statute by citing United States v. Fletcher (147 U. S., 667), where tbe court say:
“We understand tbe court to have decided ” (Clyde v. United States), “ in substance, that tbe action of tbe auditing department, either in allowing or rejecting such a claim, was not an essential prerequisite to tbe jurisdiction of tbe Court of Claims to bear it,” as quoted from tbe opinion of tbe court by Mr. Justice Miller, and adding: “But if such claims are presented to tbe Department for allowance, and tbe Department, in tbe exercise of its discretion suspends action upon them until proper vouchers are furnished, or other reasonable requirements are complied with, tbe courts should not assume jurisdiction until final action is taken. So long as tbe claim is pending and waiting final determination in tbe Department courts should not be called upon to interfere, at least unless it ignores such claim, or fails, to pass upon it within a reasonable time. This was tbe rale applied by this court with respect to .a pending survey of lands in New Orleans v. Paine (147 U. S., 261).”
Tbe effect of tbe decision is that tbe pendency of tbe claim in tbe Department in tbe manner indicated by tbe court operates by way of abatement of tbe suit in court or by way of *229 suspension of the entry of judgment while the same claim is thus pending elsewhere. Whether such condition of the claim would suspend the statute of limitation as to the commencement of a suit in this court is not decided.
But that was a case entirely different from the present one. There the accounting officers expressly suspended action on certain items until proper vouchers were furnished. Nothing-like that took place in this case. Here the accounting officers, examined the whole account of the claimant as referred to themby the Quartermaster-G-eneral and certified a balance due thereon,, and said that if he believed he was aggrieved by their decision he was not without remedy, as it was o].)en to him .to reach a judicial determination through the Court of Claims.
As we hold that the case was finally disposed of in the War Department when the Secretary drew his requisition of June 24, 1885, and in the Treasury Department when Comptroller Maynard, February 11,1886, denied the application to reopen the case, the limitation of the statute began to run even on the claimant’s theory at one of those times and had run out when the claim was transmitted to this court in 1893.
The claimant insists that his claim was not finally disposed of in the TreasuryDepartment until June 12,1889, when Comptroller Gilkeson acted upon the application of May 25,1889, for reopening. The answer to that position is that his application was too late. It was not only after the certified balance was paid, but after Mr. Maynard, the Comptroller who made the decision, had gone out of office, and had been succeeded by Mr. Butler, and who had also been succeeded by Mr. Gilkeson.
It is urged for the claimant that his application-was made while the same Auditor, Mr. Williams, remained in office; but he was not the officer by whom the decision was made.
In the organization of the TreasuryDepartment, as between the accounting officers, the Auditor is subordinate to the Comptroller. His duty is to state accounts in detail and to certify to the Comptroller, for his decision thereon, such balances, or none, as the facts and the law appear to him to warrant, with such reasons for his action as will lay the whole matter before the Comptroller; but he decides nothing. His conclusions are not binding upon the Comptroller nor upon *230 anybody else. In this very case the Comptroller did not concur in the balance certified by the Auditor, but added $206.19 thereto.
The Comptroller alone makes decisions, and he only can open the same for reconsideration. Such is the understanding and practice in the Department, as may be seen by the circular of the Secretary in relation to the reopening of decided claims printed at the end of finding v, to which is attached a concurrence, in writing, by the First and Second Comptrollers and the Commissioner of Customs, who is a comptroller of customs under another name, in which-the auditors did not join. This relation of subordination of the Auditor to the Comptroller is also recognized in the statutes.
In the Act of March 3,1809, chapter 30 (2 Stat. L., 538), entitled “An act to further amend the several acts for the establishment and regulation of the Treasury, War, and Navy Departments,” it is provided:
“Seo. 2. And be it further enacted, That it shall be the duty of the Comptroller of the Treasury, in every case where in his opinion further delays would be injurious to the United States, and he is hereby authorized to direct the Auditor of the Treasury, and the accountants of the War and Navy Departments, at any time, forthwith to audit and settle any particular account which the said officers may be respectively authorized to audit and settle and to report such settlement for his revision and final decision.” * * *
A singular oversight occurred when the provisions of that section of the act of 1809 were reproduced in Eevised Statutes, section 271. At the time of its passage there was but one Comptroller in the Department, who comptrolled all the accounts except those in the Post-Office Department, and the fact that subsequently a second comptroller had been provided for, to whom was transferred the duty of comptrolling most of the accounts of the War and Navy Departments, was overlooked. But that is immaterial in this case. The enactment is referred to only for the purpose of showing Congressional recognition of the subordination of the Auditor to the Comptroller.
The judgment of the court is that the petition must be dismissed.