Howell, Judge,
delivered the opinion of the court:
Plaintiff Arnold Friedlander was commissioned an ensign in the United States Coast and Geodetic Survey on December-22, 1942, and Served as such until April 1,1944, when he'was. promoted to lieutenant (junior grade). He served in this latter rank until his resignation from the service effective August 27, 1946. Between November 4, 1943, and June 16, 1945, plaintiff' was ordered to and did participate in 242" aerial, flights'totaling 642.2 hours flying time. On flights totaling 277.5 hours, he was designated as “navigator,” on flights totaling 88.4 hours, as “flight check observer,” and the remaining 276.3 flying hour's were logged by plaintiff' while undergoing naval aviation training. ■ Belying on Sec. 18, Pay Beadjustment Act of 1942 (56 Stat. 359, 368) as implemented by. Executive Orders 9195 and 9550, plaintiff submitted vouchers claiming 50 per cent increased pay for flight duty. The Coast and Geodetic Survey submitted his-claim to the General Accounting Office for direct settlement, and on March 15, 1948, that office allowed plaintiff’s claim for the period from May 10 to June 15,1945, amounting to $100 (which has been paid to plaintiff), and disallowed the balance, which totaled $1,324.38. Plaintiff seeks here to recover judgment for the amount of his claim for flying pay disallowed by the General Accounting Office.
So much of the applicable statute and executive orders-as are pertinent are quoted below.
Sec. 18, Pay Beadjustment Act of 1942,56 Stat. 359,368:
Officers * * * of any of the services mentioned in the title of this Act [An Act to readjust the pay and allowances of personnel of the Army, Navy, Marine-Corps, Coast Guard, Coast and Geodetic Survey, and Public Health Service] and members of the Beserve forces of such services, and the National Guard shall receive an increase of 50 per centum of their pay when by orders of competent authority they are required to-participate regularly and frequently in aerial flights,, *10 and when in consequence of such orders they do participate in regular and frequent flights as defined by such Executive orders as have heretofore been, or may hereafter be, promulgated by the President * * *. Regulations in execution of the provisions of this paragraph shall- be made by the President and shall, whenever practicable in his judgment, be uniform for all of the services concerned. [Italics supplied.] '
Sec.. 19, Pay Readjustment Act of 1942, supra:
* * * The provisions of this Act shall become effective as of June 1,19421
Executive Order No. 9195, dated July 7,1942:
For the purpose of carrying into effect the provisions of * * * section 18 of the Pay Readjustment Act of 1942 * * * relative to increased pay for personnel of the Army, Navy, Marine Corps, Coast Guard, and National Guard when by orders of competent authority they are required to participate regularly and frequently in aerial flights, and when, in consequence of such orders they do participate in regular and frequent flights, the following regulations are hereby promulgated and made applicable to all officers * * * of the Army, Navy, Marine Corps, Coast Guard and National Guard.
1. Definitions as used in these regulations—
(a) The term “qualified aircraft pilot” shall be construed to include any commissioned or warrant officer or enlisted man of any branch of his respective service who on July 2, 1926, held any aeronautical rating as pilot in the, Army Air Corps, or who has been or may hereafter be given by competent authority in the respective services an aeronautical designation or rating as an aviator or pilot of service types of aircraft in the Army, Navy, Marine Corps, Coast Guard, or National Guard.
(b) The term “qualified construed to include any commissioned or warrant officer or enlisted man. who has been or may hereafter be given by competent authority in the respective services any aeronautical designation or rating as an observer in the Army, Navy, Marine Corps, Coast Guard, or National Guard.
(c) The term “student aviator” shall be construed to include any officer or warrant officer in the Navy, Marine Corps, or Coast Guard, who is duly appointed and assigned to a course of instruction in piloting aircraft.
* * * * *
*11 (g) The term “aerial flight” is defined as a journey in an aircraft. It begins when the aircraft takes off from rest at any point of support and terminates when it next comes to a complete stop at a point of support.
Executive Order No. 9550, dated May 10, 1945:
By virtue of and pursuant to the authority vested in me by section 18 of the Pay Readjustment Act of 1942 * * * if is ordered as follows:
1. The provisions of Executive Order No. 9195 of July 7, 1942, as now or hereafter amended, prescribing regulations relating to aerial flights by personnel of the Army, Navy, Marine Corps, Coast Guard, National Guard, and officers of the Public Health Service detailed for duty with the Coast Guard, shall apply to commissioned officers of the Coast and Geodetic Survey while serving under jurisdiction of that service, in the same manner and to the same extent as they apply to officers of the Navy, except that the duties and obligations imposed by Executive Order No. 9195, as amended, upon the Chief of Naval Personnel or any commanding officer of the Navy in regard to personnel of the Navy are hereby imposed upon the Director of the Coast and Geodetic Survey in regard to personnel of the Coast and Geodetic Survey.
2. The provisions of this order shall be effective as of June 1,1942.
The General Accounting Office based its rejection of Friedlander’s claim upon three grounds. The first was that Executive Order 9195, issued July 7, 1942, by President Roosevelt, (quoted in pertinent part, supra) omitted authorization of flight pay for Coast,and Geodetic Survey officers; while Executive Order 9550, issued May 10,1945, by President Truman (quoted supra) ordering flight pay for Coast and Geodetic Survey officers, purported to be retroactive to June 1,1942 (the effective date of E. O. 9195). It was the Comptroller General’s opinion that Executive Order 9550, if given retroactive effect, would amount to the President’s reversal of the decision of a predecessor in office. The Comptroller General’s point was that President Roosevelt had made a determination that Coast and Geodetic Survey officers were not to be given flight pay and that President Truman could not reverse his predecessor’s decision and give it retroactive •effect. The decision of this court in Cotton v. United States, *12 29 C. Cls. 207, was cited by tbe Comptroller General in support of bis position.
Second, tbe Comptroller General beld that between'Movem-ber 6, 1943, and September 20, 1944, plaintiff bad not held an aeronautical rating as pilot or designation or rating as an observer from the Director of the Coast and Geodetic Survey as required by Executive Orders 9195 and 9550, and so would be ineligible for flight pay for that period.
Third, the Comptroller General held that plaintiff’s designation as naval aviator on May 15, 1945, was not in compliance with applicable executive orders because not made-by the Director of Coast and Geodetic Survey as required.
The Comptroller General allowed plaintiff flying pay for the. period May 10 to June 15, 1945, on the basis of Fried-lander’s recognized status as a student aviator.
The Comptroller General’s first ground for rejection, and the only understandable objection to payment, was not mentioned in defendant’s brief. Since, however, it was the primary basis of denial, we feel that it is the actual issue presented. This court’s decision in the Cotton case, supra, which the Comptroller General felt restrained him from authorizing payment based upon the retroactive effect of' Executive Order 9550, held, inter alia, “that the right of an incumbent to review his predecessor’s decision extends only to mistakes arising from errors in calculation and to cases of rejected claims concerning which material evidence is afterwards discovered and produced,” (p. 225). Cotton v. United States and the cases cited therein[1] all deal with the-decision by an administrative officer of a case or controversy and hold that the disposition of that case or controversy becomes res judicata as to a subsequent holder of the administrative office, except for the instances noted. The instant case differs from the aforementioned line of cases in that the-issuance of Executive Order 9195 by President Roosevelt was not the decision by him of a case or controversy.[2] The- *13 Pay Readjustment Act of 1942, quoted in pertinent part, supra, contemplated the issuance of implementing executive orders to be retroactively effective to the date of the Act, For some reason, President Roosevelt did not choose to exercise the power granted him under the Act of 1942 to grant flying pay to Coast and Geodetic Survey officers. More than likely, there were then no Coast and Geodetic Survey officers assigned to regular and frequent aerial flights, as it appears that no aircraft of its own were then operated by that service. However, it cannot be said that his failure to exercise all the power granted him under the Act thereby foreclosed, his successor from subsequently exercising the remaining or residual power as long as the enabling legislation remained in force. If the Comptroller General’s interpretation were to prevail, it would follow that any discretionary power . lodged in the President by Congress would have to be completely exhausted by the incumbent or fail as to his successor in office. Any failure to exhaust the full extent of the power would be interpreted as an exercise of discretion completely foreclosing further action by a successor. We have only to look to the continued existence of flexible tariff laws, especially under Reciprocal Trade Agreements, to discover the fallacy of such a doctrine.
Accordingly, Executive Order 9550 was validly retroactive to June 1, 1942, and if the plaintiff fulfilled the requirements of the Act of 1942 and of Executive Orders 9195 and 9550, he was entitled to receive additional pay for aerial flights.
The Comptroller General’s second basis for rejection covered only the period from November 6,1943, to September 20, 1944. The Comptroller General took the position that plaintiff during that period had not held “any aeronautical rating as a pilot or designation or rating as an observer from the Director of the Coast and Geodetic Survey as required by that Executive Order [No. 9195].” ■ This view is urged upon the court by counsel for the defendant.
Executive Order 9195, as amended by Executive Order 9550, defines a “qualified aircraft observer” to include “any commissioned * * * officer who has been or may hereafter be given by competent' authority in the respective *14 services any aeronautical designation or rating as an observer * * Plaintiff Friedlander, during the pertinent period, flew in a Coast Guard plane under the designations of “navigator” and “flight check observer.” These designations were made by the Director, Coast and Geodetic Survey, in travel and assignment to duty orders directed to. plaintiff, and certainly such designations fall within the scope of the above-quoted Executive Order. During the period plaintiff flew as a “navigator” or “flight check observer,” he was a “qualified aircraft observer” within the meaning of Executive Orders 9195 and 9550.
The Comptroller General’s third ground for rejection covered a portion of the period after May 15, 1945, and was based upon the proposition that plaintiff’s designation as a “naval aviator” on May 15, 1945, could not be considered a compliance with Executive Order 9195 as amended by Executive Order 9550, since those Executive Orders require that such designation be made by the Director of the Coast and Geodetic Survey. This point was not raised in defendant’s brief nor was it presented during oral argument, and thus we assume that it must have been as clear to the defendant as it seems to us, under the particular circumstances of this case, that plaintiff’s designation as “naval aviator” by the Superintendent of Aviation Training at the Naval Air Station, Pensacola, was adopted by the Director of the Coast and Geodetic Survey, thus meeting the requirements of Executive Orders 9195 and 9550. Since the Director of the Coast and Geodetic Survey had no pilot-training facilities, arrangements were made with the Navy to train plaintiff, and the Navy’s designation of plaintiff as “naval aviator” was accepted by the Director. Furthermore, the Director had no independent means of evaluating plaintiff’s aeronautical qualifications; hence he did, in fact, accept the Navy’s designation and act upon it.
Defendant’s argument set forth in its brief purporting to cover the period after September 20, 1944 (apparently in its entirety, although the General Accounting Office has already allowed part of plaintiff’s claim for this period), is interesting. We quote:
*15 Plaintiff is not entitled to flight pay beginning with the date of September 21, 1944, because Executive Order No. 9550 expressly provides flight .pay for officers of the Coast and Geodetic Survey only when serving under the jurisdiction of the Coast Guard. Service or training at two naval air stations is not such service.
So far as the record discloses, the Coast Guard enters this case only because it was the supplier of certain planes in which plaintiff flew. There is no mention of the Coast Guard in Executive Order 9550; neither is there any indication that a Coast and Geodetic Survey officer must fly under the jurisdiction of the Coast Guard in order to collect flight pay. In the event defendant’s counsel meant to refer in his brief to the jurisdiction of the Coast and Geodetic Survey rather than to that of the Coast Guard (which is a separate branch of the service), we are yet unable to grasp the significance of the argument. The evidence clearly indicates that Fried-lander was at all times under orders from the Director of the Coast and Geodetic Survey and was attached to the naval establishment on temporary duty for training purposes. As long as plaintiff was under orders from the Director of the Coast and Geodetic Survey, it logically follows that he was within that service’s jurisdiction.
We note only in passing defendant’s argument that plaintiff is not entitled to extra compensation for flight duty because the work plaintiff performed was not hazardous and because, as advanced on oral argument, plaintiff held a “draft-exempt job from which he resigned as soon as the war was over.” An “aerial flight” is defined in Executive Order 9195 as “a journey in an aircraft.” If Congress and the President had wanted to provide extra compensation only for combat flights or flights in bad weather, they could easily have done so. But this they did not do. As the law stood during the period in question, extra compensation was provided for “regular and frequent aerial flights,” and we find it impossible to read any further requirements into it.
Commissioned officers of the Coast and Geodetic Survey become an integral and an important component of the armed forces under circumstances first set out in the Act of May 22, 1917, which statute is in effect today as it was in World Wars I and II. In part, its provisions are as follows:
*16 The President is authorized, whenever in his judgment a, sufficient national emergency exists, to transfer to the service and jurisdiction of the War Department, or of the Navy Department, such vessels, equipment, stations, and personnel of the Coast and Geodetic Survey as he may deem to the best interest of the country *' * *. Any of the personnel of the Coast and Geodetic Survey who may be transferred as' herein provided, shall, while under the jurisdiction of the War Department or the Navy Department, have proper military status and shall be subject to the laws, regulations, and orders for the government of the Army or Navy, as the case may be, m so far as the same may be applicable to persons whose retention permanently in the military service of the United States is not contemplated by law. [Italics supplied.]
The powers thus granted the President by the Act of 1917 have been exercised on more than one occasion. Executive Orders 9113 (March 28, 1942), 9187 (June 30, 1942), and 9236 (September 3, 1942) actually transferred certain Coast and Geodetic Survey personnel to the War and Navy Departments. Plaintiff was subject to such a transfer, and his position was draft exempt in the same manner and to the same extent as that of any naval officer.
It is not contended that plaintiff did not, during the periods in question, partake in regular and frequent aerial flights or that any bar, other than those disposed of above, exists to his right to receive flight pay.
Plaintiff is therefore entitled to judgment, the entry thereof to be withheld pending a computation of the amount due by the General Accounting Office or the filing by the parties of a stipulation setting forth such amount.
It is so ordered.
Madden, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
In accordance with the above opinion, and on a stipulation filed by the parties, judgment for the plaintiff was entered July 9, 1951, for $1,324.45.

 Jackson v. United States, 19 C. Cls. 504; Day v. United States, 21 C. Cls. 262; Rollins & Presbrey v. United States, 23 C. Cls. 106.

 Note that Executive Order 9195 was itself retroactive. It is not contended that an executive order may not be given retroactive effect, but only that one President may not reverse the decision of a predecessor in office- and give the reversal retroactive effect.