MAHLER ET AL. *v.* EBY, INSPECTOR IN CHARGE IMMIGRATION SERVICE, U. S. DEPARTMENT OF LABOR, AT CHICAGO, ILLINOIS.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 184.  Argued January 24, 25, 1924.—Decided February 18, 1924.

1. The inhibition of *ex post facto* laws, (Const. Art. I, § 9) applies only to criminal laws, and not to a law for deporting aliens who by conviction of crime are shown to be undesirable as residents of this country.  P. 39.

2. The deportation thus provided is not punishment.  *Id.*

3. Repeal of the law under which an alien was convicted does not do away with the conviction as a basis of subsequent deportation.  *Id.*

4. The Alien Act of May 10, 1920, establishes classes of persons who in the judgment of Congress are eligible for deportation and directs the Secretary of Labor to deport those, of these classes, whom he finds to be undesirable residents.  *Held* not invalid as a delegation of legislative power, since the discretion delegated is sufficiently defined by the policy of Congress and the common understanding as to what " undesirable residents " are.  P. 40.

5. Greater precision is required of statutes defining and punishing crimes (*Cohen Grocery Co. Case,* 255 U. S. 81) than of those

delegating legislative power to executive boards and officers. P. 41.

6. In deportation proceedings pursuant to the Alien Act of May 10, 1920, against aliens found to have been convicted under the Espionage and Selective Draft Acts, the convictions are sufficient evidence *per se* that the respondents are "undesirable residents." P. 42.

7. Failure of aliens to answer questions, under advice of counsel, *held* also to warrant inferences by the Secretary of Labor against their desirability. *Id.*

8. Under the above Act of 1920, a finding by the Secretary of Labor that an alien is an undesirable resident, is a jurisdictional prerequisite to deportation. P. 43.

9. The finding must appear in the warrant of deportation itself, or the warrant is void, and the finding cannot be inferred from recitals of the warrant that the alien "has been found" in the United States in violation of the Deportation Act, and has been finally convicted of the offenses named in that act. P. 43.

10. It is a general principle that, where a finding of fact is a condition precedent to an act of an executive officer exercising delegated legislative power, the record of his act must show that the finding was made. P. 44. *Wichita R. R. & Light Co.* v. *Public Utilities Comm.,* 260 U. S. 48.

11. This Court, on an appeal, can notice and rectify a plain and serious error in a *habeas corpus* proceeding, though unassigned. P. 45.

12. Where a warrant for deportation, issued under the Act of May 10, 1920, is jurisdictionally defective in not reciting that the alien had been found an undesirable resident, his discharge in *habeas corpus* may be delayed, under Rev. Stats., § 761, for a reasonable time, to give opportunity for the Secretary of Labor to make the finding, if justified, from evidence in the original, or in a new, deportation proceeding, and to issue a new warrant accordingly. P. 46.

Reversed.

THIS is an appeal from a judgment of the District Court of the United States for Northern Illinois, dismissing five writs of *habeas corpus* and remanding the appellants, who are aliens, to the custody of the Immigration Inspector at Chicago for deportation, in pur-

suance to warrants issued by the Secretary of Labor. The cases were consolidated in the court below.

In 1918, all the appellants were tried and found guilty of violation of § 5 of the Selective Service Act of May 18, 1917, c. 15, 40 Stat. 76, 80, and of § 4 of the Espionage Act of June 15, 1917, c. 30, 40 Stat. 217, 219. All but Petro Nigra were sentenced to the United States Penitentiary at Leavenworth, Kansas, for a period of five years; and Nigra was sentenced to the same place for 18 months. Upon error to the Court of Appeals these sentences were affirmed and became final.

Pending the imprisonment of appellants, the Secretary of Labor issued warrants for arrest of the appellants under the Act of May 10, 1920, c. 174, 41 Stat. 593.

They were all in the same form. That as to Mahler was as follows:

" WARRANT OF ARREST
No. 54616/151
United States of America
U. S. Department of Labor,
Washington.

" To Harry R. Landis, Inspector in Charge,
Chicago, Illinois.

" Whereas, from evidence submitted to me, it appears that the alien, Herbert Mahler, who landed unknown at the port of Seattle, Wash., on or about the 1st day of April, 1913, has been found in the United States in violation of the Act of May 10, 1920, for the following among other reasons:

" That he is an alien who since August 1, 1914, has been convicted of a violation of or a conspiracy to violate an Act entitled 'An Act to punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes,' approved June 15, 1917,

or the amendment thereof, approved May 16, 1918, the judgment on such conviction having become final; and that he is an alien who since August 1, 1914, has been convicted of a violation of or a conspiracy to violate an act entitled 'An Act to authorize the President to increase temporarily the Military Establishment of the United States,' approved May 18, 1917, or any amendment thereof or supplement thereto; the judgment on such conviction having become final.

" I, Theodore G. Risley, Acting Secretary of Labor, by virtue of the power and authority vested in me by the laws of the United States, do hereby command you to take into custody the said alien and grant him a hearing to enable him to show cause why he should not be deported in conformity with law," etc.

. On June 14 and 15, 1921, each appellant had a hearing before Immigrant Inspector Paul at Leavenworth, at which appellants were examined orally and the indictment, the judgments, and the opinion and judgment of the Circuit Court of Appeals were introduced in evidence. The Secretary of Labor on the records thus made and presented to him issued a warrant of deportation of each appellant in all respects, *mutatis mutandis,* like that in the case of Herbert Mahler, as follows:

" To U. S. Commissioner of Immigration, Montreal, Canada, or to any officer or employee of the U. S. Immigration Service:

" Whereas, from proofs submitted to me, after due hearing before Immigrant Inspector C. H. Paul, held at Leavenworth, Kansas, I have become satisfied that the alien Herbert Mahler, who landed at the port of Seattle, Washington, on or about the 1st day of September, 1913, has been found in the United States in violation of the Act of May 10, 1920; that he is an alien who since August 1, 1914, has been convicted of a violation of or a conspiracy to violate an Act entitled 'An Act to punish acts of

interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes,' approved June 15, 1917, or the amendment thereof approved May 16, 1918, the judgment on such conviction having become final. That he is an alien who since August 1, 1914, has been convicted of a violation of or a conspiracy to violate an Act entitled 'An Act to authorize the President to increase temporarily the Military establishment of the United States, approved May 18, 1917, or any amendment thereof or supplement thereto, the judgment on such conviction having become final.

"I, E. J. Henning, Assistant Secretary of Labor, by virtue of the power and authority vested in me by the laws of the United States, do hereby command you to return said alien to Canada the country whence he came, at the expense of the appropriation: 'Expenses of Regulating Immigration, 1922.'

"For so doing, this shall be your sufficient warrant.

"Witness my hand and seal this 10th day of November, 1921.

"(Signed) E. J. Henning,
"Assistant Secretary of Labor."

The Act of Congress enacted May 10, 1920, c. 174, 41 Stat. 593, provides that aliens of certain classes described in the act, in addition to those for whose expulsion authority already exists, shall, upon the warrant of the Secretary of Labor, be taken into his custody and deported in the manner provided in §§ 19 and 20 of the Immigration Act of February 5, 1917, 39 Stat. 889, "if the Secretary of Labor, after hearing, finds that such aliens are undesirable residents of the United States." The classes include all aliens interned as enemies by the President's proclamation under Rev. Stats. § 4067, and alien convicts under the Espionage Act, the Explosives

Act, the Act restricting foreign travel, the Sabotage Act, the Selective Draft Act, the Act punishing threats against the President, the Trading with the Enemy Act, and certain sections of the Penal Code. Section 2 makes the decision of the Secretary of Labor in ordering expulsion of an alien under the act final.

The petitions for writs of *habeas corpus* charged that the warrant of deportation under which the petitioners were held were void because, at the time of the issue of the warrants, the Espionage Act and the Selective Draft Act, for convictions under which they were about to be deported, had been repealed, that the Act of May 10, 1920, under which the warrant was issued, was an *ex post facto* law, because the convictions for which they were to be deported were for acts committed before its passage, that there was no legal evidence to establish that petitioners were aliens amenable to deportation under the act, that the hearings and proceedings were without due process of law, and that for these and other reasons the commitment was void.

Counsel for the appellants in their brief and in their argument attacked the constitutionality of the Act of 1920, not only because it was an *ex post facto* law, but because it delegated legislative power to an executive officer, and because the criterion for his finding, i. e., that the persons to be deported should be "undesirable residents of the United States," was so vague and uncertain that it left the liberty of the alien to the whim and caprice of an executive officer in violation of due process required by the Fifth Amendment. They further attacked the validity of the warrants on the ground that they did not show a finding by the Secretary that the appellants were undesirable residents of the United States, a condition precedent to a legal deportation. They further alleged that, as to all the petitioners, there was no evidence to sustain such a finding if it had been made, and that, as

to Petro Nigra, there was also a fatal lack of evidence at his hearing to show that he had been convicted of the violations of the statutes charged in the warrant.

*Mr. Walter Nelles,* with whom *Mr. Otto Christensen* was on the brief, for appellants.

An act which is so uncertain and indefinite as not to indicate the matter or thing to which it relates, or which furnishes no standard for determining what acts, conduct or persons come within its purview is invalid: (1) Because it constitutes a delegation and surrender of legislative power to the courts or to executive officers; (2) By permitting arbitrary and unjust discrimination on the part of courts or executive officers, it violates due process of law and equal protection of the law; and, if the act be a penal statute, it is also in violation of the constitutional right to be informed of the nature and cause of the accusation.

The effect of repealing specific statutory offenses which form the basis of government proceedings under other acts is to nullify the latter legislation, for it no longer has anything to " feed upon."

A warrant of deportation must be valid upon its face and show that all the statutory requirements have been complied with.

Before any executive officer can deport any alien, the right must be clearly and explicitly conferred by act of Congress. There must be some evidence to sustain the charge upon which the warrant of deportation is based.

*Mr. George Ross Hull,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for appellee.

MR. CHIEF JUSTICE TAFT, after stating the case as above, delivered the opinion of the Court.

The theory of the draftsman of the petition for the writ and of the assignment of errors was that the same

constitutional restrictions apply to an alien deportation act as to a law punishing crime. It is well settled that deportation, while it may be burdensome and severe for the alien, is not a punishment. *Fong Yue Ting* v. *United States,* 149 U. S. 698, 730; *Bugajewitz* v. *Adams,* 228 U. S. 585, 591. The right to expel aliens is a sovereign power necessary to the safety of the country and only limited by treaty obligations in respect thereto entered into with other governments. *Fong Yue Ting* v. *United States, supra.* The inhibition against the passage of an *ex post facto* law by Congress in § 9 of Article I of the Constitution applies only to criminal laws. *Calder* v. *Bull,* 3 Dall. 386; *Johannessen* v. *United. States,* 225 U. S. 227, 242; and not to a deportation act like this, *Bugajewitz* v. *Adams,* 228 U. S. 585, 591. Congress by the Act of 1920 was not increasing the punishment for the crimes of which petitioners had been convicted, by requiring their deportation if found undesirable residents. It was, in the exercise of its unquestioned right, only seeking to rid the country of persons who had shown by their career that their continued presence here would not make for the safety or welfare of society. In *Hawker* v. *New York,* 170 U. S. 189, the validity of a law of New York which forbade, on penalty, any one who had been convicted of a felony from practicing medicine, was upheld as a reasonable exercise of the police power and not an increase of the punishment for the felony. The present is even a clearer case than that.

The brief for appellants insists that as the laws under which the appellants were convicted have been repealed, the fact of their conviction can not be made the basis for deportation. It was their past conviction that put them in the class of persons liable to be deported as undesirable citizens. That record for such a purpose was not affected by the repeal of the laws which they had violated and under which they had suffered punishment. The repeal

did not take the convicted persons out of the enumerated classes or take from the convictions any probative force rightly belonging to them.

Nor is the act invalid in delegating legislative power to the Secretary of Labor. The sovereign power to expel aliens is political and is vested in the political departments of the Government. Even if the executive may not exercise it without congressional authority, Congress can not exercise it effectively save through the executive. It can not, in the nature of things, designate all the persons to be excluded. It must accomplish its purpose by classification and by conferring power of selection within classes upon an executive agency. *Tiaco* v. *Forbes*, 228 U. S. 549, 557. That is what it has done here. It has established classes of persons who in its judgment constitute an eligible list for deportation, of whom the Secretary is directed to deport those he finds to be undesirable residents of this country. With the background of a declared policy of Congress to exclude aliens classified in great detail by their undesirable qualities in the Immigration Act of 1917, and in previous legislation of a similar character, we think the expression "undesirable residents of the United States" is sufficiently definite to make the delegation quite within the power of Congress. As far back as 1802 the naturalization statute of that year, c. 28, 2 Stat. 153, prescribed that no alien should be naturalized who did not appear to the court to have behaved during his residence in this country "as a man of good moral character, attached to the Constitution of the United States, and well disposed to the good order and happiness of the same." Our history has created a common understanding of the words "undesirable residents" which gives them the quality of a recognized standard.

We do not think that the discretion vested in the Secretary under such circumstances is any more vague or

uncertain or any less defined than that exercised in deciding whether aliens are likely to become a public charge, a discretion vested in the immigration executives for half a century and never questioned. Act of August 3, 1882, c. 376, 22 Stat. 214, and Act of February 5, 1917, c. 29, 39 Stat. 874. See *Buttfield* v. *Stranahan,* 192 U. S. 470, 496.

*International Harvester Co.* v. *Kentucky,* 234 U. S. 216, and *United States* v. *Cohen Grocery Co.,* 255 U. S. 81, are cited on behalf of petitioners. In those cases, statutes were held invalid for vagueness. They were both criminal cases in which the uncertain words of the statute encountered the limitation of the Fifth and Sixth Amendments. They did not inform the accused sufficiently of the nature and cause of the accusation. The rule as to a definite standard of action is not so strict in cases of the delegation of legislative power to executive boards and officers. Cases like the one before us were distinguished from the *Cohen Case* by Chief Justice White in his opinion in that case when he said (p. 92) " the cases relied upon all rested upon the conclusion that, for reasons found to result either from the text of the statutes involved or the subjects with which they dealt, a standard of some sort was afforded."

The next objection is that there was no evidence before the immigration inspector and the Secretary upon which a warrant could properly issue. A special objection of this kind is taken in the case of Petro Nigra. It is said that, in the record of the hearing of his case before the inspector, there does not appear any evidence of his conviction under the Espionage and Selective Draft Acts. It is true that the certified copies of the indictment and judgment against all the petitioners do not appear in the hearing of Nigra as shown, but there is a stipulation between the parties in another part of the record herein that such certified copies were used in the hearing of each

petitioner. It is clear that the hearing of Nigra was not properly reported and that his case is like the others.

But it is said there was no evidence in the hearings of any of them as to their being undesirable residents of the United States. There were their convictions. Those were enough to justify the Secretary in finding that they were undesirable. The statute does not expressly require additional evidence. If it did, there was here the circumstance that, after the examination of the petitioners had proceeded to a certain point of inquiry, the petitioners under the advice of counsel declined to answer further questions, an attitude from which the Secretary might well infer that what would be revealed by answers would not add to their desirability as residents. Of course the question how much additional evidence should be required must vary with the class which makes its members eligible for deportation. Alien enemies interned during war may be very good people, and their having been interned may have little bearing on their being good material for residents or citizens when peace returns; but the aliens in this case were convicted of crimes under such circumstances that the Secretary without more might find them undesirable as residents.

But the Secretary made no express finding, so far as the warrant for deportation discloses. It is contended that this renders the warrant invalid. It is answered on behalf of the appellee, that, in *habeas corpus* proceedings, the prisoner is not to be discharged for defects in the original arrest or commitment, because the object of the proceeding is not like an action to recover damages for an unlawful arrest or commitment, but is to ascertain whether the prisoner can lawfully be detained in custody, citing *Nishimura Ekiu* v. *United States*, 142 U. S. 651, 662. What that case really decided was that, even if the arrest was unjustified by the warrant or commitment on its face, yet if the evidence on the hearing of the petition for *habeas*

*corpus* showed either that facts existed at the time of the arrest or had occurred since, which made the detention legal, the court would not release the prisoner but would do what justice required and would dispose of the prisoner accordingly. *Iasigi* v. *Van De Carr,* 166 U. S. 391; *Stallings* v. *Splain,* 253 U. S. 339, 343; *Bilokumsky* v. *Tod,* 263 U. S. 149, 158; *Mensevich* v. *Tod,* decided this day, *post,* 134.

In the case before us the defect in the warrants of deportation has not been supplied. The defect is jurisdictional. There is no authority given to the Secretary to deport except upon his finding after a hearing that the petitioners were undesirable residents. There is no evidence that he made such a finding except what is found in the warrant of deportation. The warrants recite that upon the evidence the Secretary has become satisfied that the petitioner aliens have been found in the United States in violation of the Act of May 10, 1920, and that they were finally convicted of the offenses named in the act. They could not have been found in the United States in violation of the Act of 1920 until after the Secretary had found that they were undesirable residents. Appellee's argument is that, therefore, this must be taken to mean that he finds them undesirable citizens. But the words "have been found" naturally refer to a time when the warrant of arrest was served on them, and before he had them before him. They exclude a possible meaning that he was then making their stay in the country illegal by implication of a finding that they were undesirable. This conclusion is borne out by the language of the Secretary in the warrant of arrest which before the hearings he issued against the petitioners and in which he directed their arrest on the ground that they had been found in the United States in violation of the Act of May 10, 1920. It would clearly appear from these two documents, which are naturally to be construed *in pari materia,* that the

Secretary did not deem his finding that the petitioners were undesirable citizens essential to enable him to deport them. Indeed, he seems to have used forms applicable to aliens of a fixed excluded class to be deported on identification with the class, without any further finding by him. The natural construction of his language is that he has become satisfied that they are in the country in violation of the act, solely because they have been convicted as stated.

Does this omission invalidate the warrant? The finding is made a condition precedent to deportation by the statute. It is essential that, where an executive is exercising delegated legislative power, he should substantially comply with all the statutory requirements in its exercise and that, if his making a finding is a condition precedent to this act, the fulfillment of that condition should appear in the record of the act. In *Wichita R. R. & Light Co.* v. *Public Utilities Commission,* 260 U. S. 48, a statute of a State required that a public utility commission should find existing rates to be unreasonable before reducing them, but there was no specific requirement that the order should contain the finding. We held that the order in that case made after a hearing and ordering a reduction was void for lack of the express finding in the order. We put this conclusion not only on the language of the statute but also on general principles of constitutional government. After pointing out the necessity for such delegation of certain legislative power to executive agencies we said (p. 59):

"In creating such an administrative agency the legislature, to prevent its being a pure delegation of legislative power, must enjoin upon it a certain course of procedure and certain rules of decision in the performance of its function. It is a wholesome and necessary principle that such an agency must pursue the procedure and rules enjoined and show a substantial compliance therewith to

give validity to its action. When, therefore, such an administrative agency is required as a condition precedent to an order, to make a finding of facts, the validity of the order must rest upon the needed finding. If it is lacking, the order is ineffective.

" It is pressed on us that the lack of an express finding may be supplied by implication and by reference to the averments of the petition invoking the action of the Commission. We can not agree to this."

If the principle thus stated is to be consistently adhered to, it is difficult in any view to give validity to the warrants of deportation before us.

It is said that no exception was taken to the warrant on this account until the filing of the brief of counsel in this Court. There was an averment that the warrant was void without definite reasons in the petition of *habeas corpus.* There was nothing of the kind in the assignment of error. But we may under our rules notice a plain and serious error though unassigned. Rules 21, § 4, and 35, § 1, 222 U. S., Appendix, pp. 27, 37; *Wiborg* v. *United States,* 163 U. S. 632, 658; *Clyatt* v. *United States,* 197 U. S. 207, 221–222; *Crawford* v. *United States,* 212 U. S. 183, 194; *Weems* v. *United States,* 217 U. S. 349, 362. The character of the defect is such that we can not relieve ourselves from its consideration. The warrant lacks the finding required by the statute and such a fundamental defect we should notice. It goes to the existence of the power on which the proceeding rests. It is suggested that if the objection had been made earlier it might have been quickly remedied. · There was no chance for objection afforded the petitioners until, after the warrant issued, in the petition for *habeas corpus.* The defect may still be remedied on the objection made in this Court.

We need not discharge the petitioners at once because of the defective warrant. By § 761 of the Revised Statutes, the duty of the court or judge in *habeas corpus* proceedings is prescribed as follows:

" The court, or justice, or judge shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice require."

Under this section, this Court has often delayed the discharge of the petitioner for such reasonable time as may be necessary to have him taken before the court where the judgment was rendered, that defects which render discharge necessary may be corrected. *In re Bonner,* 151 U. S. 242, 261; *Medley, Petitioner,* 134 U. S. 160, 174; *Coleman* v. *Tennessee,* 97 U. S. 509; *United States* v. *McBratney,* 104 U. S. 621, 624; *Bryant* v. *United States,* 214 Fed. 51, 53. The same rule should be applied in *habeas corpus* proceedings to test the legality of confinement under the decision of an administrative tribunal like the Secretary of Labor in deportation cases. No time limitation is imposed upon proceedings under the Act of May 10, 1920. If upon the evidence the Secretary finds that these petitioners are undesirable residents and issues warrants of deportation reciting that finding with the other jurisdictional facts, there will then be no reason, so far as this record discloses, why they should not be deported.

Accordingly, the judgment of the District Court is reversed with directions not to discharge the petitioners until the Secretary of Labor shall have reasonable time in which to correct and perfect his finding on the evidence produced at the original hearing, if he finds it adequate, or to initiate another proceeding against them.

*Reversed.*