**SEIF v. NAGLE, Commissioner of Immigration.**

(Circuit Court of Appeals, Ninth Circuit. August 2, 1926. Rehearing Denied September 7, 1926.)

No. 4796.

**1. Aliens ⊜⇒54(6)—Where alien had fair hearing in deportation proceedings, minor irregularities, as failure to read to him warrant for arrest, held not vital.**

That the warrant on which an alien was arrested for deportation was not shown or read to him is not vital, where he had a fair hearing, especially where the charges made therein were correctly stated to him.

**2. Aliens ⊜⇒54(10)—Hearing in deportation proceedings held not unfair for failure at once to inform as to right to counsel.**

That an alien was not advised of his right to counsel in deportation proceedings until his examination was in progress, when it was adjourned to give him opportunity to employ counsel, which he declined to do, *held* not to render the hearing unfair.

**3. Aliens ⊜⇒54(13)—Warrant of deportation held properly amended, where place from whence he came had become territory of different nation.**

Where the place of the nativity of an alien, and from which he emigrated to the United States, fell within the limits of a new nation as the result of the World War, a warrant for his deportation previously issued was properly amended to direct deportation to that country.

**4. Aliens ⊜⇒54(13)—Warrant of deportation held not invalidated by delay in its execution.**

Warrant of deportation *held* not invalidated by delay in its execution for several years, due to war conditions and later to his own efforts.

Habeas Corpus. Petition by Max Seif, on behalf of Nathan Seif, his brother, against John D. Nagle, Commissioner of Immigration for the Port of San Francisco, for writ of habeas corpus. From an order denying the writ, petitioner appeals. Affirmed.

McGee & Mather, of Oakland, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. This is an appeal from an order denying a writ of habeas corpus. The order followed the sustaining of a demurrer to a petition filed on October 15, 1925, by Max Seif, on behalf of Nathan Seif, his brother.

Nathan Seif was born in 1885 at Drohobycz, in the province of Galicia, then in Aus-

tria, and entered the United States at New York in December, 1903. After coming to the United States he consorted with certain prostitutes, and at a later time caused the transportation of two of the women from San Francisco, Cal., to Portland, Or., for purposes of prostitution. About 1912 in the United States court he pleaded guilty to the charge of violating the White Slave Traffic Act (Comp. St. §§ 8812–8819) and served a term in the penitentiary. Before his discharge, warrant was issued by the Acting Secretary of Labor, directing apprehension of Seif as one being found in the United States in violation of the act of Congress approved February 20, 1907 (34 Stat. 898), as amended by act approved March 26, 1910 (36 Stat. 263), charging "that said alien is unlawfully within the United States, in that he has been found receiving, sharing in, or deriving benefit from the earnings of a prostitute or prostitutes, and in that he has been found assisting a prostitute or prostitutes."

On July 20, 1914, while Seif was in prison, he was called for examination before an immigrant inspector and a brief hearing was had. Seif answered some questions, but declined to answer others, whereupon the examination was discontinued, for the reason that Seif would not testify any further. After his release from prison, and on July 27, 1914, he was examined at Seattle before an immigration inspector. He testified that he came to the United States in 1903; that in 1910 and 1911 he had induced a woman to go from one state to another for purposes of prostitution; and that he had assisted prostitutes financially. During the examination he was told of his right to be represented by counsel, if he desired it. Seif said he would see Sadie Miller, whereupon the hearing was adjourned to give him an opportunity to communicate with counsel or friends. On July 28th the hearing was resumed. Seif then said that he did not wish a lawyer, but wished to make a statement. He said he was guilty of violation of the White Slave Traffic Act, had served a sentence therefor, and would like to be released "on probation," and again expressly waived his right to be represented by counsel. The inspector recommended deportation. Thereafter through his attorney Seif filed a brief, wherein he admitted that he had committed the offense charged, but prayed for leniency because of his conduct while a prisoner. He was allowed his liberty under bond.

On October 27, 1914, the Acting Commissioner General of Immigration recommended to the Secretary of Labor that warrant of deportation issue, but that execution be sus-

penfled until it could be effected with safety, and that in the meantime the alien be released under bond or upon his own recognizance. On October 29, 1914, the Acting Secretary ordered deportation, but in the order stated: "In view of the fact that a state of war exists in Europe at this time, the alien should not be conveyed to New York for deportation until he can be returned with safety. In the meantime he may remain at large on the bond now outstanding." In 1920 the bondsmen were called on to surrender the alien for deportation, but he did not appear. In 1923, on petition of counsel, deportation was stayed for one year, and the alien, having surrendered himself, was allowed to go at large on a new bond, but on May 27, 1924, the department directed that deportation be proceeded with. Thereafter on July 15th the warrant of deportation was amended, so as to direct deportation to Poland, of which country the province of Galicia, since the World War, had become a part. Again, on solicitation of counsel for Seif, deportation was stayed, and on November 12, 1924, the Department of Labor ordered deportation to be proceeded with. On September 29, 1925, the present proceeding was instituted in court.

[1] The objection that the alien was not permitted to examine the warrant of arrest, that the warrant was not read to him, and that the evidence upon which it was based was not shown to him, as required by rules 4 and 22, governing procedure by the Department of Labor, is not of vital importance, provided the alien had a fair hearing. Mahler et al. v. Eby, 264 U. S. 32, 44 S. Ct. 283, 68 L. Ed. 549; United States v. Uhl, 211 F. 628, 128 C. C. A. 560; Chun Shee v. Nagle (C. C. A.) 9 F.(2d) 342. However, the record is that, when the alien was called for examination on July 20th, before being questioned, the inspector advised him that he had been arrested by virtue of a warrant charging that he was unlawfully in the United States for the reason that he had been found receiving, sharing in, or deriving benefit from the earnings of a prostitute or prostitutes, and that he had been found assisting a prostitute or prostitutes, and that the hearing was being accorded to him in order that he might show cause,

14 F.(2d)—27

if any there was, why he should not be deported. After the notification, the inspector said to him: "Do you understand?" The alien answered: "Yes, I understand; but I don't see why I should answer any of your questions."

[2] The hearing at Seattle was very fair. The alien fully explained his status and expressly waived his right to obtain counsel. The fact that it was not until the examination was in progress that he was advised of his right to be represented by counsel did not make the hearing unfair. Low Wah Suey v. Backus, 225 U. S. 460, 32 S. Ct. 734, 56 L. Ed. 1165.

[3] There was no error in the order amending the warrant of deportation, so as to require deportation to Poland, instead of Austria. The statute provides that the alien shall be returned to the country whence he came, which means deportation to the country of his nativity or citizenship. The Supreme Court has said that "the term 'country' is used in section 20 (Immigration Act Feb. 5, 1917, 39 Stat. 874, 890 [Comp. St. § 4289¼k]), to designate, in general terms, the state which, at the time of deportation, includes the place from which the alien came (Mensevich v. Tod, 264 U. S. 134, 44 S. Ct. 282, 68 L. Ed. 591; United States v. Smith [D. C.] 2 F.[2d] 90)."

[4] It is urged that the Secretary of Labor and Commissioner of Immigration have waived the right to deport in that they have waited an unreasonable time after the Department of Labor assumed jurisdiction of the detained. We find no merit in the point. When the original order of 1914 was made, directing deportation to Austria, because of the war the alien could not have been deported to that country. Since the war, even as late as 1924, the alien himself has exerted efforts to prevent deportation and has been successful in obtaining several stays. But in August, 1925, the government of Poland issued the necessary passport. No sufficient reason appears for issuing judicial process that will prevent carrying out the order of deportation. United States v. Tod (D. C.) 3 F.(2d) 836.

The order is affirmed.