## PESTEREFF v. REED, Inspector of Immigration.

Second Division. Nome. October 1, 1927.

No. 3060.

1. Aliens ⬤═46—Immigration—Habeas Corpus.
    Pestereff and eight other Russians crossed from East Cape,
    Siberia, to Cape Prince of Wales, in a small boat, and thence
    came down the coast to Nome, where they were arrested and held
    for inspection as aliens coming into the United States in violation
    of law. A Board of Special Inquiry was called by the inspector,
    before whom this petitioner and his eight companions were given
    a hearing. The Board found, and so reported, that they were in
    the United States without immigration visé and in violation of
    law. They were informed of the action of the Board and of their

⬤═See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

right to appeal to the Secretary of Labor. They were confined in the federal jail at Nome, awaiting orders from Washington for their final disposition. Thereafter petitioner sued out a writ of habeas corpus, alleging in support thereof that the government of the United States has no diplomatic relations with the government of Russia, and is unable to deport petitioner to Russia for that reason. *Held*, being aliens and in the United States in violation of law, they may be deported, notwithstanding the want of diplomatic relations with Russia. Habeas corpus denied, and petitioner ordered to be held, awaiting the action of the government of the United States.

**2. Aliens ⬅54(15)—Habeas Corpus ⬅4—Exclusion of Aliens.**

It is elementary that, in exclusion and deportation cases, habeas corpus lies only to ascertain if the petitioner was accorded a fair hearing, under the immigration laws. If such hearing was unfair, the court will accord him a fair hearing, to ascertain if he is unlawfully in the country; but this writ will lie only after an appeal to and decision by the Secretary of Labor. Writ in this case dismissed.

This proceeding was commenced on the 7th day of September, 1927, by the issuance of a writ of habeas corpus served upon the defendant, R. W. J. Reed, who made return thereon, which return was traversed by the petitioner, Stephen Pesteleff, and hearing was had upon the return of the writ, from which it appears that the petitioner, Stephen Pesteleff, is an alien, being a native and subject of Russia. He, together with eight other aliens, left East Cape, Siberia, on the 20th day of August, 1927, in a small skin boat, commonly called a whale-boat, and came over to Cape Prince of Wales, Alaska, a distance of about 60 miles, where they landed with the intention of making the United States their future residence. Arriving at Cape Prince of Wales, which is an isolated place, with very few inhabitants, they immediately proceeded down the Alaskan coast toward Nome, which is about 120 miles from Cape Prince of Wales, bringing their boat with them. They arrived at Jess creek, about eight miles from Nome, on the 26th day of August, 1927, and went into camp there, afterwards separating and making their way individually to Nome, which is the official United States port of entry for that section of Alaska. It appears that the United States immigrant inspector at Nome had been apprised of the coming of these aliens, and caused a lookout to be kept for them, and requested the United

States marshal at Nome to apprehend these aliens upon their arrival at Nome, or wherever else they might be found, and to bring them before such inspector for inspection and examination, in accordance with the laws and regulations pertaining to the arrival of aliens at United States ports.

The petitioner arrived at Nome on the 29th day of August, 1927, and was thereafter and on the same day apprehended by the United States marshal, acting under the direction of the immigrant inspector aforesaid, without a warrant of arrest, and was brought before the said immigrant inspector at Nome for inspection and examination as aforesaid. The said inspector thereupon reported by telegraph to the Director of Immigration at Ketchikan, Alaska, the arrival and detention of petitioner and said other aliens at Nome aforesaid, and under instructions from such Director of Immigration, and on the 1st day of September, 1927, convened a Board of Special Inquiry at Nome, according to the provisions of section 153 of title 8 of the United States Code (39 Stat. 887), to ascertain the status and disposition of said alien.

The said Board consisted of Hugh O'Neill, Esq. (who now appears as associate counsel for petitioner), Dr. Curtis Welch, of Nome, and R. W. J. Reed, Esq., immigrant inspector at Nome, aforesaid. Upon such hearing it appeared from the petitioner's own testimony, under oath, and it is nowhere disputed, that petitioner is an alien, a native of Russia; that he left East Cape, Siberia, on August 20, 1927, and arrived at Nome on August 29, 1927, via Cape Prince of Wales, Alaska, as aforesaid. It further appears from his own testimony that he has no immigation visé as required by the Immigration Act of 1924 (43 Stat. 161 [8 USCA § 213]). It further appears, from the record of such hearing, that upon motion of Mr. O'Neill, seconded by Dr. Welch, it was decided unanimously that the alien, Stephen Pesteleff, be debarred from admission to the United States for lack of immigration visé; that the petitioner was then and there informed of his exclusion, and was also informed of his right to appeal to the Secretary of Labor from such decision, and was then and there asked if he desired to so appeal, to which question the petitioner responded "Yes."

The said immigrant inspector thereupon reported the said proceedings, and the result thereof, to the said Director of

Immigration by telegraph, and forwarded to him by mail the record of the said proceedings, and now detains the said petitioner in the said federal jail at Nome aforesaid, pending the order of the said Director of Immigration, or of the Department of Labor, as to the disposition of said petitioner.

It further appears that the government has not provided any special place at Nome, Alaska, for the detention and examination of aliens arriving at said place, and that the federal jail at Nome is the only suitable and convenient place available for said purpose.

On the 7th day of September, 1927, the petitioner petitioned this court for a writ of habeas corpus, alleging that said petitioner was being illegally restrained of his liberty, for the reason that, as petitioner is informed and believes, the government of the United States has no diplomatic relations with the government of Russia, and now is and for a long time to come will be unable to execute any warrant or other process of deportation, and is unable to deport petitioner to Russia, and is making no attempt to do so, and has no intention of doing so, and that unless the said R. W. J. Reed, inspector of immigrants, is prevented from so doing, he will continue unlawfully to restrain petitioner of his liberty and confine him in the federal jail at Nome, Alaska, all in violation of petitioner's rights under the Constitution and laws of the United States. A writ of this court was accordingly granted, made returnable on September 9, 1927, to which the defendant, R. W. J. Reed, as United States immigrant inspector, produced the said petitioner in court and made his answer and return, setting forth the facts hereinbefore stated, including a full and complete record of the proceedings of said Board of Special Inquiry, and alleging that the defendant had the petitioner in his custody and control, and was then and there detaining him, pending the final determination of said matter by the Department of Labor. Whereupon time was allowed the petitioner to traverse the said answer and return, which said traverse was filed herein on September 12, 1927, and the matter thereafter fully argued by respective counsel.

It is admitted for all purposes that the hearing of the Board of Special Inquiry was in every respect fair, and the finding of the Board that petitioner is an alien, and that he arrived in the United States without an immigration visé, is correct, and

that he was rightfully denied admission by said Board. It is also admitted that the petitioner withdrew his desire and intention of an appeal to the Secretary of Labor from the decision of said Board, which said withdrawal is in writing and dated, and was filed with said immigrant inspector, on September 16, 1927; the only real contention advanced by petitioner being that, owing to no diplomatic relations existing between the United States and Russia, he cannot be deported or sent back to Russia at this time, and that he should therefore be set at liberty. It was also urged by petitioner that he was detained without a warrant several days after landing, that such landing was not in view of the immigrant inspector, and that the latter therefore had no right to detain him; that such detention was accordingly in violation of his constitutional rights and did not confer jurisdiction.

O. D. Cochran and Hugh O'Neill, both of Nome, for petitioner.

Chas. E. Taylor, Asst. U. S. Atty., of Fairbanks, for respondent.

LOMEN, District Judge. Counsel for petitioner, in their argument to this court, strenuously contend:

(1) That petitioner had landed in the United States, and, having done so, unlawfully or otherwise, he could not be lawfully interfered with, except upon information, warrant of arrest, and order of deportation.

(2) That his arrest and detention by the immigrant inspector, without a warrant, was unlawful, and in consequence thereof petitioner is being unlawfully restrained of his liberty.

(3) That, owing to there being no diplomatic relations between our own government and that of Soviet Russia, it is impossible to deport petitioner to the country from whence he came, and that to hold him in custody indefinitely and until the time arrives when he might be deported would deprive petitioner of his constitutional rights.

The Immigration Act provides that any alien who arrives at a port of the United States and is not entitled to land, in the opinion of the examining immigrant inspector, shall be "detained" for examination in relation thereto by a Board of Special Inquiry. That Board has authority to determine whether the alien thus held shall be allowed to land or shall

be deported. From their decision an appeal may be taken to the Secretary of Labor, and his decision, sustaining an order of deportation, is declared by the act to be final. And all aliens illegally arriving are to be immediately sent back, after the fact that they have illegally arrived has been determined, unless, in the opinion of the Secretary of Labor, immediate deportation is not practicable or proper. Act Feb. 5, 1917 (8 USCA § 101 et seq.).

The government contends that the physical landing of the petitioner at Cape Prince of Wales was not an arrival at a port of the United States, and that until his arrival at Nome, or some other port of entry of the United States, and a report to and examination by a United States immigration inspector, the petitioner has not effected a legal "landing" in the United States, as contemplated by the Immigration Act. The immigrant inspector at Nome was apprised of the coming of petitioner, was watching for his arrival, and when he did arrive, and failed to report at the immigration office, the inspector caused petitioner to be brought before him for examination, and thereafter proceeded in accordance with the provisions of the Immigration Act.

So that petitioner must be considered as in custody at the limit of the jurisdiction awaiting the order of the authorities, and has never yet entered the United States within the meaning of the law. Kaplan v. Tod, 267 U. S. 228, 45 S. Ct. 257, 69 L. Ed. 585; U. S. ex rel. Patton v. Tod (C. C. A.) 297 F. 385–396; U. S. v. Ju Toy, 198 U. S. 253, 25 S. Ct. 644, 49 L. Ed. 1040; Nishimura Ekiu v. U. S., 142 U. S. 651, 12 S. Ct. 336, 35 L. Ed. 1146; The Japanese Immigrant Cases, 189 U. S. 86, 23 S. Ct. 611, 47 L. Ed. 721; Ex parte Chow Chok (C. C.) 161 F. 632; Kaneda v. U. S., 276 F. 697; U. S. v. Tod (D. C.) 292 F. 243; In re Ross, 140 U. S. 453, 11 S. Ct. 897, 35 L. Ed. 581; Ex parte Hamaguchi (C. C.) 161 U. S. 186.

Petitioner has never acquired any residence, domicile, or right to land within our borders. It is said in 7 R. C. L. p. 833, § 45:

"It is proper to detain or confine temporarily an alien as part of the means necessary to give effect to the provisions for the expulsion of aliens. Proceedings to exclude or expel would be vain if those accused could not be held in custody pending the inquiry into their deportation. Detention is a usual feature of every case of arrest on a

criminal charge, even when an innocent person is wrongfully accused; but it is not imprisonment in a legal sense."

And it was said in the case of United States v. Tod (C. C. A.) 1 F. (2d), at page 256:

"When an alien arrives and applies for admission to the country, he may be detained and held without warrant until the immigration officials have determined whether he is entitled to admission. Until that question is determined, the immigration authorities need no process to detain the alien in their custody. The original jurisdiction to hold and exclude rests upon the custody of his person acquired at the time of his arrival, and this original jurisdiction continues until the question of his right to be admitted has been determined in his favor and the proceedings before the immigration officials may be regarded as closed."

This general proposition is sustained in U. S. v. Curran (C. C. A.) 297 F. 946, 36 A. L. R. 877; The Japanese Immigrant Cases, 189 U. S. 86, 23 S. Ct. 611, 47 L. Ed. 721; Seif v. Nagle (C. C. A.) 14 F.(2d) 416; Immigration Act 1924–1925, and in many other cases.

An examination of the record of the Board of Special Inquiry fully discloses sufficient grounds for petitioner's detention by the government. It fully appears, and is also admitted, that petitioner is an alien, and that he arrived at a port of the United States without an immigration visé. His admission to the United States was impossible under the provisions of section 213 of the United States Code (43 Stat. 161), wherein it is provided that:

"No immigrant shall be admitted to the United States unless he has an unexpired immigration visé," etc.

It has been universally held that, if sufficient ground for his detention by the government is shown, he is not to be discharged for defects in the original arrest or commitment. Seif v. Nagle (C. C. A.) 14 F.(2d) 416; Nishimura Ekiu v. U. S., 142 U. S. 651, 12 S. Ct. 336, 35 L. Ed. 1146; Iasigi v. Van de Carr, 166 U. S. 391, 17 S. Ct. 595, 41 L. Ed. 1045; Stalling v. Splain, 253 U. S. 339, 40 S. Ct. 537, 64 L. Ed. 940; Antolish v. Paul (C. C. A.) 283 F. 957; Chun Shee v. Nagle (C. C. A.) 9 F.(2d) 342; U. S. v. Williams (C. C. A.) 200 F. 538; U. S. v. Uhl (C. C. A.) 211 F. 628; Healy v. Bachus (C. C. A.) 221 F. 358. Even where a warrant of deportation lacked jurisdictional averments, and was therein fatally de-

fective, the Supreme Court of the United States, in the case of Mahler v. Eby, 264 U. S. 32, 44 S. Ct. 283, 68 L. Ed. 549, refused to discharge the petitioner in habeas corpus proceedings; the court saying:

"We need not discharge the petitioners at once because of the defective warrant [deportation warrant]. By section 761 of the Revised Statutes ＊ ＊ ＊ the duty of the court or judge in habeas corpus proceedings is prescribed as follows: 'The court or justice or judge shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice require.' Under this section, this court has often delayed the discharge of the petitioner for such reasonable time as may be necessary to have him taken before the court where the judgment was rendered, that defects which render discharge necessary may be corrected"—citing In re Bonner, 151 U. S. 242, 14 S. Ct. 323, 38 L. Ed. 149; In re Medley, 134 U. S. 160, 10 S. Ct. 384, 33 L. Ed. 835; Coleman v. Tennessee, 97 U. S. 509, 24 L. Ed. 1118, and other cases.

The court further says at page 557 of the same decision:

"The same rule should be applied in habeas corpus proceedings to test the legality of confinement under the decision of an administrative tribunal like the Secretary of Labor in deportation cases. No time limitation is imposed upon proceedings under the Act of May 10, 1920. ＊ ＊ ＊ Accordingly, the judgment of the District Court is reversed, with directions not to discharge the petitioners until the Secretary of Labor shall have reasonable time in which to correct and perfect his finding on the evidence produced at the original hearing, if he finds it adequate, or to initiate another proceeding against them."

I cite this case to show how far the United States Supreme Court is inclined to go in this class of cases. In the case at bar, no error was committed. The petitioner was before the Board of Special Inquiry; he was fully apprised of the nature of the hearing; he testified under oath at the hearing; he admits the hearing was fair in every respect; and the court will not now interfere on account of any defect or irregularity, if any there be, in connection with the original arrest of the petitioner.

The petitioner contends that he is being deprived of his liberty without due process of law, and in violation of his constitutional rights. Petitioner is an alien; he is not a resident alien; he has acquired no domicile in the United States. Then, what are his constitutional rights? In the case last cited, Mahler v. Eby, 264 U. S. 32, 44 S. Ct. 283, 68 L. Ed. 549, Chief Justice Taft, speaking for the court, says:

"It is well settled that deportation, while it may be burdensome and severe for the alien, is not a punishment"—citing Fong Yue Ting v. U. S., 149 U. S. 698, 13 S. Ct. 1016, 37 L. Ed. 905 ; Bugajewitz v. Adams, 228 U. S. 585, 33 S. Ct. 607, 57 L. Ed. 978.

There has been no criminal charge, yet the confinement was not contrary to the Thirteenth Amendment of the Constitution, as claimed by petitioner. The latter has no application in these proceedings. And in Taylor on Due Process of Law, at page 233, § 118, it is said:

"While aliens are undoubtedly entitled to due process, the distinction must be clearly drawn between such as are resident and such as are nonresident. * * * Congress may so legislate as to provide for the exclusion of aliens, fixing the conditions on which they may be admitted, and the regulations under which they may be deported. * * * It may also intrust the enforcement of such regulations to executive officers. That the deportation of an alien who is found to be here in violation of law is not a deprivation of liberty without due process of law, and that the provisions of the Constitution securing the right of trial by jury have no application"—citing Chae Chan Ping v. U. S., 130 U. S. 581, 9 S. Ct. 623, 32 L. Ed. 1068 ; Nishimura Ekiu v. U. S., 142 U. S. 651, 12 S. Ct. 336, 35 L. Ed. 1146 ; Fong Yue Ting v. U. S., 149 U. S. 698, 13 S. Ct. 1016, 37 L. Ed. 905 ; Lem Moon Sing v. U. S., 158 U. S. 538, 15 S. Ct. 967, 39 L. Ed. 1082 ; Wong Wing v. U. S., 163 U. S. 228, 16 S. Ct. 977, 41 L. Ed. 140 ; Fok Yong Yo v. U. S., 185 U. S. 296, 22 S. Ct. 686, 46 L. Ed. 917 ; Japanese Immigration Case, 189 U. S. 86, 23 S. Ct. 611, 47 L. Ed. 721 ; Chin Bak Kan v. U. S., 186 U. S. 193, 22 S. Ct. 891, 46 L. Ed. 1121 ; U. S. v. Sing Tuck, 194 U. S. 161, 24 S. Ct. 621, 48 L. Ed. 917. "Thus it seems to be settled that the order of an executive officer excluding aliens, if made in accordance with statutory authority, is necessarily due process. * * * But, after an alien has once been admitted according to law, he becomes entitled at once to the protection due to a native or naturalized citizen of the country."

The petitioner has never been admitted to the country according to law. He has had due process of law in the hearing before the Board of Special Inquiry. He had a fair hearing. He had the right of appeal to the Secretary of Labor, which appeal he abandoned. And this court is convinced, and so decides, that the petitioner has not been deprived of any constitutional rights in the premises. A person being denied the privilege to enter is not deprived of any liberties which he had theretofore enjoyed. The gate is simply closed, and he may not enter.

Finally, petitioner contends that, owing to there being no diplomatic relations existing between our own government and

the government of Russia, it is impossible for him to be deported, and therefore he should be discharged and set at liberty. Petitioner, in support of his contention, relies on the following cases: In re Petition of Brooks (D. C.) 5 F.(2d) 238; Ex parte Matthews (D. C.) 277 F. 857; U. S. ex rel. Ross v. Wallis (C. C. A.) 279 F. 401; Colyer v. Skeffington (D. C.) 265 F. 17. Whatever the motive which prompted the decision in these cases, none of them can be applied to the case at bar. The facts do not coincide.

In the case at bar, the hearing *is still pending* before the immigration authorities; no order of exclusion or deportation has been issued by the Department of Labor. Nothing has been done, except that the report and record of the proceedings of the Board of Special Inquiry have been sent to the Director of Immigration at Ketchikan, Alaska, for such further action as he or his superior officers may prescribe. In this case, the department has not admitted its inability to exclude or deport. .

The matter is one for the determination of the political departments of the government, and, as was said in the case of U. S. ex rel. Boynton v. Blaine, 139 U. S. 306, 11 S. Ct. 607, 55 L. Ed. 183:

"While the political department of the government has not parted with its power over a matter, the intervention of the Judicial Department cannot be invoked to compel action."

To the same effect are the following cases: New Orleans v. Paine, 147 U. S. 261, 13 S. Ct. 303, 37 L. Ed. 162; Cotton v. U. S., 29 Ct. Cl. 207.; U. S. v. Fletcher, 147 U. S. 668, 13 S. Ct. 434, 37 L. Ed. 322; Astiazaran v. Santa Rita M. Co., 148 U. S. 83, 13 S. Ct. 457, 37 L. Ed. 376; Warner Valley St. Co. v. Smith, 9 App. D. C. 203; Louisiana ex rel. Elliott v. Jumel, 107 U. S. 711, 2 S. Ct. 128, 27 L. Ed. 448; The Divina Pastora, 4 Wheat. 52, 4 L. Ed. 512.

To discharge the petitioner would be an unwarrantable interference with proceedings now pending in a political department of the government. There is no presumption that the Department of Labor will not do its duty, nor that deportation cannot be made, with or without diplomatic relations. If that department cannot deport, its duty must be found in some other direction. It is not for the court to instruct it. We cannot admit that the United States is powerless.

In the case of Chae Chan Ping v. United States, 130 U. S. 581, 9 S. Ct. 623, 32 L. Ed. 1068, Mr. Justice Field used the following language:

"The power of exclusion of foreigners being an incident of sovereignty belonging to the government of the United States, as a part of those sovereign powers delegated by the Constitution, the right to its exercise at any time when, in the judgment of the government, the interests of the country require it, cannot be granted away or restrained on behalf of any one. The powers of government are delegated in trust to the United States, and are incapable of transfer to any other parties. They cannot be abandoned or surrendered. Nor can their exercise be hampered, when needed for the public good, by any considerations of private interests."

The language of the learned justice is just as true and applicable to-day as when it was uttered, and is adopted by this court as applicable to the case at bar. This court is not yet ready to believe that the United States will surrender its right of sovereignty to any person or country, but is able at all times to properly regulate and control all those who are in the country, or attempt to come into it. The petitioner has had a fair hearing. The Board of Special Inquiry has decided that he is an alien, arriving here without an immigration visé, and is not lawfully entitled to admission to the United States, and this court cannot, in contravention of such decision, open the gate and unlawfully permit the petitioner to enjoy the privileges which have been properly denied him. A writ of habeas corpus cannot serve such purpose, and cannot here be considered in the nature of an appeal. It is elementary that, in exclusion and deportation cases, habeas corpus lies only to ascertain if the petitioner was accorded a fair hearing under the immigration laws. If such hearing was unfair, the court will accord him a fair hearing to ascertain if he is unlawfully in the country. But this writ will lie only after an appeal to and decision by the Secretary of Labor.

Petitioner admits that he had a fair hearing and has abandoned his appeal to the Secretary of Labor, so that on that score, at least, he is not entitled to any interference from this court.

To decide otherwise would be in opposition to all law or reason, and would probably work incalculable injury to this community in that it might, and probably would, cause an influx of aliens from Siberia across the narrow channel of Ber-

ing Sea into Alaska. To let them do so is not the legislative policy of the United States.

In Ex parte Jurgans (D. C.) 17 F.(2d) 507, a Russian was ordered deported, and warrant of deportation issued, dated February 12, 1920, and writ of habeas corpus dismissed February 16, 1927 (want of diplomatic relations notwithstanding).

Writ of habeas corpus must be dismissed. It is so ordered.