**UNITED STATES ex rel. CONSOLA v. KARNUTH, District Director of Immigration and Naturalization.**

Civil Action No. 2352.

District Court, W. D. New York.

June 30, 1945.

728

Israel Rumizen, of Buffalo, N. Y., for relator.

George L. Grobe, U. S. Atty., and Frank G. Pugsley, Atty. for Immigration and Naturalization Service, both of Buffalo, N. Y. (R. Norman Kirchgraber, Asst. U. S. Atty., of Buffalo, N. Y., of counsel), for respondent.

KNIGHT, District Judge.

Application is made herein for a writ of habeas corpus to inquire into the legality of the detention of relator, held for deportation under a warrant issued by the Assistant to the Secretary of Labor on December 16, 1938. Theretofore and in or about October, 1937, a warrant of deportation was issued by the Secretary of Labor to deport relator to Italy. This warrant was set aside by this court through habeas corpus proceedings (D.C., 25 F.Supp. 902), and thereafter the warrant first herein mentioned was issued. Petitioner again applied for a writ, the application was dismissed (D.C., 27 F.Supp. 461), and on appeal the order of dismissal was affirmed on December 18, 1939 (2 Cir., 108 F.2d 178). The order of this court on the mandate of the Circuit Court was entered on January 12, 1940. Thereafter and on about February 1, 1940, the petitioner was ordered to appear before the District Director of Immigration, and he was released under bond. The petitioner on May 25, 1945, was ordered to report for deportation.

The details of the foregoing proceedings are here given for the reason that the petitioner herein makes the point that the warrant was not executed within a reasonable length of time; that no excuse has been shown for the delay, and it is, therefore, now "functus officio." Petitioner concedes that the period of time after World War 2 broke out between the United States and Italy on December 11, 1941, till Italy was conquered is not to be considered as any part of any unnecessary delay. We are, therefore, concerned only with the period of time from January 12, 1940, to December 11, 1941, and the period which has elapsed since Italy was conquered by the Allies. It appears from the affidavit of the respondent that subsequent to the entry of the "order on the said mandate" the attorney for the petitioner requested and was granted delay in deportation in order that an application for a writ of certiorari might be made to the Supreme Court, and the respondent was directed by the Commissioner of Immigration and Naturalization to release petitioner upon the giving of a sufficient bond in order that such application for a writ might be made. No application for any writ was made. In March, 1940, a private bill was introduced in Congress for the relief of petitioner from the deportation order. Deportation was stayed pending action on such bill, and the then Session of Congress adjourned on January 3, 1941, without having passed the bill. While as pointed out the war between the United States and Italy was declared on December 11, 1941, war in Europe began September 1, 1939. It also appears from the affidavits on behalf of the respondent that deportation of aliens to Italy had largely ceased in the fall of 1940, due to the European war; that the policy of the Immigration and Naturalization Service during and after the summer of 1940 was temporarily to stay the deportation of aliens when, because of hostilities abroad, deportation would endanger the life or health of such persons, and this policy continued until deportation became impossible because of the United States entry into the war. It seems quite apparent that there has been no unreasonable delay in the execution of the warrant herein.

Since relator was released on bond to the Immigration and Naturalization Service on February 2, 1940, he has never been held in jail and has only been held by that authority for a few minutes on May 26, 1945, when he was notified to appear for deportation. On that day the application for the writ herein was made and the respondent then admitted to bail. During the interim since the first warrant for deportation herein was issued to the present time, the relator, it appears, has engaged in and has built up for himself a business as a distributor of soft drinks.

Conditions, as hereinbefore mentioned, have been such as to warrant the delay in carrying out the warrant of deportation. On behalf of petitioner numerous cases have been cited in which the question of delay in the execution of warrants of deportation was considered. Most of the

cases arose while a relator was being held in prison. Some of these also were cases in which the warrant could not be carried out lacking a country or a port to which the alien could then be deported. In practically all of the cases cited by relator the writs were dismissed.* Seif v. Nagle, 9 Cir., 14 F.2d 416, 417, is comparable on the facts with the instant case in that more than ten years had elapsed after the issuance of the warrant of deportation. There the Circuit Court affirmed the order of the District Court denying the writ. The court said:

"It is urged that the Secretary of Labor and Commissioner of Immigration have waived the right to deport in that they have waited an unreasonable time after the Department of Labor assumed jurisdiction of the detained. We find no merit in the point."

■ There can be no question that an alien can not be held either in jail or for deportation for an unreasonable length of time, but such time is to be determined by existing circumstances. In Moraitis v. Delany, D.C., 46 F.Supp. 425, 431, the court said:

"What constitutes a reasonable time for detention of petitioner in custody for deportation depends upon the facts and circumstances of particular cases."

In United States ex rel. Ross v. Wallis, 2 Cir., 279 F. 401, 403, the court said:

"What is a reasonable time varies with circumstances; during the World War it was a matter of even judicial cognizance that opportunities for deportation were rare and long delayed."

See also Janavaris v. Nicolls, D.C., 47 F.Supp. 201.

None of the cases cited on behalf of the petitioner support his contention, and the majority of them in the expression of the opinions hold with the respondent.

A point made by the petitioner is that the warrant dated December 16, 1938, and issued by the Assistant to the Secretary of Labor, is legally void because the power to deport aliens rests exclusively with the Department of Justice.

■ The "Immigration and Naturalization Service" and the office of "Commissioner of Immigration and Naturalization" were created under those names as a part of the Department of Labor by Executive Order No. 6166 dated June 10, 1933, 5 U.S. C.A. § 132 note. These divisions of the Department of Labor continued until the "Immigration and Naturalization Service" was transferred from the Department of Labor to the Department of Justice under Reorganization Plan V, effective June 14, 1940, 5 U.S.C.A. following section 133t pursuant to the provisions of the Reorganization Act of April 3, 1939, approved April 3, 1939, 53 Stat. 561. The Reorganization plan included the office of the Commissioner of Immigration and Naturalization, and the functions of the Immigration and Naturalization Service of the Department of Labor were transferred to the Department of Justice. Section 8(a) of the Reorganization Act of 1939 provides:

"All orders, * * * issued, or granted by or in respect of any agency or function transferred to, or consolidated with, any other agency or function under the provisions of this title, and in effect at the time of the transfer or consolidation, shall continue in effect to the same extent as if such transfer or consolidation had not occurred, until modified, superseded, or repealed."

The warrant is an order within the meaning of Section 8(a), and it has never been "modified, superseded, or repealed." Respondent here is acting under the instructions of the Attorney General and in the exercise of such instructions seeks to enforce the warrant. A new warrant could have been issued, but that was not required. The petitioner points out that Section 8(b) of the aforesaid Reorganization Act makes provision that the court on a showing of a necessity for a survival of any suit, action or proceeding to obtain a settlement of the questions involved on motion may allow the same to be maintained. If the warrant of deportation is an "order" included in section 8(a), supra, there remained no further proceeding to be taken by the Attorney-General when taking over. Petitioner cites Skeffington v. Katzeff, 1 Cir.,

---

* United States ex rel. Ross v. Wallis, 2 Cir., 279 F. 401; Petition of Brooks, D.C., 5 F.2d 238; Wolck v. Weedin, 9 Cir., 58 F.2d 928; Chumara v. Smith, D. C., 29 F.2d 287; United States ex rel.

Janavaris v. Nicolls, D.C., 47 F.Supp. 201; Caranica v. Nagle, 9 Cir., 28 F. 2d 955; Seif v. Nagle, 9 Cir., 14 F.2d 416; Saksagansky v. Weedin, 9 Cir., 53 F.2d 13.

277 F. 129, as authority for the statement that the Department of Labor can not now deal with expulsion of aliens and can not interfere with the powers of the Department of Justice. It is not claimed that the Department of Labor has any authority now in the premises. The warrant is valid on its face and is enforceable now under the direction of the Attorney-General only.

█ The further contention is made by the applicant that the warrant which directs deportation to Italy is illegal and void because Italy is not the same country as it was at the time when it was issued in 1938. Concededly "country" as used in 8 U.S.C.A. § 156, refers to the state which, when the alien is to be deported, includes the place from which the alien came. Under such section the option rests with the government to deport to either the country from whence the alien came or to a foreign port where the alien embarked for the United States. The warrant directs deportation to Italy. It is the claim of the petitioner that the word "country" refers to the state or government of the country and not to the territory of the country. It is pointed out that Italy was a Monarchy in 1938 and that Premier Mussolini was then in power and established a Fascist form or system of government, that Mussolini resigned his government to the King in or about July, 1943, that Marshall Badoglio formed a new government and later resigned and that the King thereafter turned over his powers to the Crown Prince, that the Allies are now in control of Italy, that peace between Italy and the United States has not been declared and that there is an entirely new form of government there now than there was in 1938. The territory of Italy still exists, as it was when relator left there, there is still a functioning national government in Italy. "The statute provides that the alien shall be returned to the country whence he came, which means deportation to the country of his nativity or citizenship." Seif v. Nagle, supra. Nothing is found in any of the authorities cited by the applicant which is opposed to the view that this petitioner can properly be deported to Italy. In Re Koutelos, D.C., 50 F.Supp. 757, and Triant v. Nicolls, D.C., 50 F.Supp. 915, the aliens could not be deported to Greece, the country from which they came, because that country was then under the control of an enemy country and the orders directed deportation to the ports from which they embarked to the United States. In the instant case the alien came into this country from Canada, which country refused to receive him back. In Re Delany v. Moraitis, 4 Cir., 136 F.2d 129, 132, the court ordered deportation to "the power and jurisdiction of the government of his country in exile, * * *" where it appeared he could not be deported to either the port from which he embarked for the United States because that country would not accept him or the country whence he came because that country was under the control of an enemy. "The term 'country' is used in section 20 [8 U.S.C.A. § 156] to designate, in general terms, the state which, at the time of deportation, includes the place from which the alien came." United States ex rel. Mensevich v. Tod, 264 U.S. 134, 44 S.Ct. 282, 283, 68 L.Ed. 591. In that case, however, the district from which the alien came had been transferred from sovereignty of Russia to that of Poland, and the alien was ordered deported to the same place in the then Poland from which he came. Of course, here we have no question that the place from which the relator came has not been transferred from sovereignty of Italy to become a part of any other country.

█ Further, the applicant urges that this court has the power in these proceedings to admit the relator to bail pending these proceedings. In the instant case the petition herein was presented to the court on the day at which the relator was directed to report to the Immigration Service for deportation. The court at that time fixed bail in the amount of $500 but directed that the application be heard promptly. The better practice may have been to have issued an order to show cause without admission to bail. I do not believe such admission to bail was within the authority of the court. In Bongiovanni v. Ward, D.C., 50 F.Supp. 3, where suit was brought on a bond in default of the appearance of the alien, it was held that the court was without authority to admit to bail. In United States ex rel. Carapa v. Curran, 2 Cir., 297 F. 946, 36 A.L.R. 877, where a writ had been dismissed and the alien remanded to the custody of the Immigration authority and appeal taken from the order of dismissal, the question was whether the Circuit Court had authority to admit to bail pending the determination of the appeal. The court held that neither the Circuit Court nor the District Court had authority to admit to bail. In Re Hanoff, D.C., 39

F.Supp. 169, 172, cited by the relator, it was said that: "Even if petitioner has the right to bail under the provisions of the Immigration Act, the power to admit to bail is not reposed in this Court." The opinion in this case includes excerpts from several cases in which authority to admit to bail by the court is denied. Among these is the statement in United States ex rel. Ng Hen v. Sisson, D.C., 220 F. 538, 540, 541, in which Judge Learned Hand said:

"If the writ be sustained, and the prisoner discharged, then the court might provide for bail to insure his appearance if the ruling were reversed, but only in that case."

See also: United States ex rel. Weinstein v. Uhl, D.C., 266 F. 929; Ex parte Perkov, D.C., 45 F.Supp. 864.

It follows from the foregoing that the writ must be dismissed and the relator remanded to the custody of the Director of Immigration and Naturalization for deportation.