**UNITED STATES ex rel. VASSILIADES v. COMMISSIONER OF IMMIGRATION AND NATURALIZATION, ELLIS ISLAND, NEW YORK HARBOR, N. Y.**

**No. 248.**

Circuit Court of Appeals, Second Circuit.
April 17, 1939.

424

of the S.S. Exmoor of the American Export Line. He was thereupon paid off and discharged and remained in this country continuously thereafter. In 1932 he was arrested by the immigration authorities and held in custody on the charge that he had remained in the United States longer than the sixty days allowed by the Immigration Act of 1924 and rules promulgated thereunder. A hearing was had before a Board of Review which, on October 20, 1932, after finding that the evidence supported the charge of having remained longer than permitted by law, stated that "the alien may be permitted to depart voluntarily, or ship foreign one way, without expense to the United States, to any country of his choice, except contiguous territory or adjacent islands, * * *."

In conformity with the decision of the Board of Review a warrant of deportation was issued ordering that the alien be deported to Turkey but containing a clause permitting him to depart voluntarily as provided in the decision of the Board. In January, 1933, the Consul General of Turkey informed the Commissioner of Immigration that under Article 28 of the agreement of Ankara made between Turkey and Greece the relator had acquired Greek citizenship, whereupon, on January 30, 1933, the warrant of deportation was modified so as to provide for deportation to Greece rather than to Turkey, but to preserve permission to the alien to depart voluntarily as directed in the original warrant. On January 11, 1933, the relator had married an American girl of sixteen when confronted in the State Courts with a charge of statutory rape. On August 28, 1933, the New York Superintendent of Insurance, having succeeded to the rights of the relator's surety which had gone into liquidation, surrendered him to the immigration authorities. The Board of Review again considered his case on August 28, 1933, found that there had been no success in obtaining proper documents for deportation from the Greek authorities, that he had been married to a citizen of the United States on January 11, 1933, recommended that the prior order for deportation of January 30, 1933, be rescinded and that further proceedings be held in abeyance until July 1, 1934, so that representations might be made to the incoming Congress seeking a change in existing law in order to afford relief in

Carol King, of New York City (Walter H. Liebman, of New York City, of counsel), for relator-appellant.

Gregory F. Noonan, U. S. Atty., of New York City (David McKibbin, 3rd, Asst. U. S. Atty., of New York City, of counsel), for respondent-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The relator Vassiliades arrived in the United States from Patras, Greece, on December 20, 1929, as a member of a crew

case of immigrants who had married. It also recited that if the alien desired in the meantime to depart voluntarily in order to effect a legal future entry he would be permitted to do so.

The relator neglected to take advantage of the permission to depart voluntarily. On June 30, 1937, and after an unfavorable social report as to Vassiliades and his family, dated July 10, 1936, had been submitted to the Department of Labor by the International Institute, Y.W.C.A., the Board of Review again considered the case and held that on account of "the general undesirability of this alien the case is not one to be comprehended within any remediable legislation now before Congress." It recommended that, although the alien was deportable, an order of deportation should not be entered at that time, but that he should be advised that he might depart from the United States voluntarily to any country of his choice, on or before July 31, 1937. It also stated that unless the alien did so depart deportation would follow, in which event he would not under existing law be eligible to apply for entry into the United States until after one year following date of deportation and then only if the Secretary of Labor authorized him to apply for admission. In spite of this indulgence the relator neglected to leave the country within the additional period afforded him. This, as he stated, was due to lack of funds.

On September 18, 1937, the Board of Review recommended deportation to Greece and a warrant of deportation followed under date of October 5, 1937. After a Greek passport had been obtained on June 13, 1938, the relator was taken into custody for deportation. Thereupon he sued out a writ of habeas corpus on June 18, 1938, which was withdrawn on July 12, 1938, in order that he might further apply for administrative reconsideration of his case. On July 11, 1938, the executive director of the National Institute of Immigrant Welfare made a favorable social report about the Vassiliades' family which showed that its household surroundings were satisfactory, that the two children were well cared for, the family relations were harmonious and the husband after having been for some time on relief had obtained employment. After reconsideration of the two social reports which had been made, the Commission of Immigration, on July 20, 1938, ordered the New York office to proceed with deportation, whereupon the relator sued out another writ of habeas corpus which was dismissed by the District Court on July 27, 1938. From the order of dismissal this appeal was taken.

The three questions discussed by relator's counsel on this appeal are:

(1) Whether the Department of Labor could lawfully make an ex parte order of deportation without notice or hearing when an earlier deportation order made after such notice and hearing had been rescinded.

(2) Whether the Department of Labor abused the discretion granted to it under House Joint Resolution 714 of the 75th Congress, 52 Stat. 1249, in reinstating the order of deportation of January 30, 1933, without notice or hearing and upon the mere hearsay evidence contained in the original social report that the relator was "generally undesirable" where: (a) The order of deportation was based only on the charge of having "remained longer" than permitted under the Immigration Act of 1924, 8 U.S.C.A. § 201 et seq.; (b) The order was subsequently rescinded by the Department because of the relator's marriage to a citizen of the United States; (c) Two children have been born of the marriage whom, as well as their mother, the relator is supporting; (d) The charge of "general undesirability" contained in the original social report is contradicted by the last report made by the same social agency.

(3) Whether the relator, who was born in Istanbul, Turkey, is legally deportable to Greece as the order under review provides.

We think it clear that the Department of Labor had the power to make the order of deportation without a further hearing. This order like the one of January 30, 1933, which was rescinded, was based upon the relator's remaining in the United States longer than the sixty days permitted a seaman under the Immigration Act of 1924 and the rules promulgated thereunder. A full hearing had been already afforded the alien in which he admitted that he was in the country illegally. He could obtain no right to remain because he had not been deported promptly and had twice been given the privilege of departing voluntarily. The proceeding instituted in 1932 was still pending when the order of September 18, 1937, was made.

A new hearing was not required to meet a charge which had been fully established and the truth of which had been and still is conceded. Restive v. Clark, 1 Cir., 90 F.2d 847, 851; Marty v. Nagle, 9 Cir., 44 F.2d 695, 696; Seif v. Nagle, 9 Cir., 14 F. 2d 416, certiorari denied 273 U.S. 737, 47 S.Ct. 244, 71 L.Ed. 866.

The second objection to the order of deportation is also untenable. The H. J. Resolution 714 passed by the last Congress authorized the Secretary of Labor "to stay the deportation of any alien whose relief from deportation is provided for by any bill which has been favorably acted on by either the Senate Committee on Immigration or the House Committee on Immigration and Naturalization in the Seventy-fifth Congress; but such stay shall be terminated not later than the date of adjournment of the first regular session of the Seventy-sixth Congress." 52 Stat. 1249.

Section 2 of the Dies Bill (H.R. 6391, 75th Cong., 3rd Sess.) provided that:

"(a) * * * the Secretary of Labor may permit to remain in the United States for permanent residence any alien of good moral character found subject to deportation if he * * *

"(2) Has lived continuously in the United States for at least one year and has living in the United States a parent, spouse, legally recognized child * * * who has been lawfully permitted for permanent residence or is a citizen of the United States."

The Dies Bill was favorably reported on by the Senate Committee on Immigration in Report 1616, 75th Cong., 3rd Sess., and thus comes within the terms of H.J. Res. 714.

The relator had resided in the United States for more than one year and has a wife who is an American citizen and two native born children. The Secretary of Labor could, therefore, stay deportation in his case if he was found to be a person of "good moral character". Prior to marrying he had illicit relations with his present wife, her parents had him arrested and charged with statutory rape. While this charge was dismissed when he married the daughter, the original report of the International Institute of the Y.W.C.A. was certainly not favorable. It said as to Vassiliades: "He stated frankly that by marrying an American born girl he outwitted the Immigration Authorities and also avoided serving a sentence in prison. He was quite confident that he could not be deported since no passport for him could be obtained." Moreover, his wife testified that at the time of his marriage he concealed from her that he was illegally in the country and that deportation proceedings had been instituted against him.

In view of the record we certainly could not regard a refusal of the Department to find that the relator was a person of good moral character as unfounded. But even assuming that the second report established his good moral character, whether the deportation proceeding should be stayed would be wholly within the discretion of the Secretary of Labor. The record shows that both reports were sent to the Commissioner of Immigration at Washington on July 11, 1938 (see Record p. 70), and on July 20, 1938, the deputy commissioner wrote the relator's attorney that he had taken up the case with the Commissioner and that the New York office had been directed to proceed with the deportation. The case seems to have received the most careful consideration from the authorities.

The final contention that the relator should not be deported to Greece is clearly without merit. Both Greece and Turkey agree that the relator is a Greek national and the former country furnished a passport accordingly. The contention to the contrary is that Article 28 of the Ankara Treaty made between Greece and Turkey does not apply to a Greek who left Istanbul before the treaty was made.

Article 28 reads:

"Non-exchangeable Greek Orthodox Turkish nationals at present absent who left Istanbul without providing themselves with passports issued by the authorities of the Turkish Republic * * * shall not be entitled to return under the present convention.

"The two governments declare that they respectively recognize the Greek nationality of Greek Turkish nationals from Istanbul, debarred from returning under the previous article * * *".

As the relator was born in Istanbul, is of Greek race and concededly left without a Turkish passport, he is, therefore, subject to the terms of Article 28 as a non-exchangeable Turkish national of

the Greek race, who had departed from Turkey without a passport.

The contention that Article 28 referred only to Turkish nationals then in Greece or en route to Greece who may have left Istanbul without providing themselves with passports involves an interpretation quite inconsistent with the words of Article 28 which are: "at present absent", and contain no limitation as to when the persons might be so long as they were Greek Orthodox nationals "at present absent."

We think under a proper interpretation of the treaty Vassiliades was plainly a Greek national deportable to the country of which he is a subject. Title 8, Sec. 156, U.S.C.A.

Order affirmed.