ROSENBAUM, Circuit Judge,
joined by JILL PRYOR, Circuit Judge, dissenting from the denial of en banc rehearing:.
My colleague Judge William Pryor takes issue with my concurrences in In re Hunt, 835 F.3d 1277, 1280-85, No. 16-14756-J, 2016 WL 3895246, at *4-7 (11th Cir. July 18, 2016) (Rosenbaum, J., concurring),[1] and In re Clayton, 829 F.3d 1254, 1267-71, No. 16-14556-J, 2016 WL 3878156, at *10-13 (11th Cir. July 18, 2016) (Rosenbaum, J., concurring), which criticize our opinion in United States v. Matchett, 802 F.3d 1185 (11th Cir. 2015). Judge Pryor’s opinion *1144 both expressly assails my Hunt/Clayton concurrences and more generally attacks my concurrences when his opinion refers to all of the Hunt/Clayton concurrences as a whole. I respectfully disagree with his points.
Judge Pryor’s criticism of my specific Hunt/Clayton concurrences is not substantive in nature and is belied by what my concurrences actually say. As for my colleague’s more general condemnation of all of the Hunt/Clayton concurrences’ points about the arbitrary-enforcement problem that the career-offender guideline’s residual clause creates, a close review of Judge Pryor’s analysis reveals why the Hunt/Clayton concurrences have the better argument.
I.
Judge Pryor’s opinion makes two complaints expressly about my particular Hunt/Clayton concurrences: (1) that I “fret” that the .Sentencing Commission might issue a “nonsensical guideline about ‘cheese,’” see Pryor Op. at 1128, and (2) that I have mistaken vagueness for unin-telligibility.
I feel silly addressing Judge Pryor’s first point. But since he relies on it to incorrectly insinuate that I attribute ill intentions to the Sentencing Commission,[2] I think I must respond.
Surely Judge Pryor does not truly believe that the introductory paragraph of my Hunt/Clayton concurrences somehow suggests that we should worry that the Sentencing Commission might issue a “nonsensical guideline about ‘cheese.’ ”[3] But just to reassure my colleague, I note that I do not now nor have I ever lived in fear, 'that the Sentencing Commission might issue a “nonsensical guideline about ‘cheese.’ ”[4]
*1145 I used what I described as the “hypothetical” cheese guideline as an analogy. An analogy, of course, is a literary device that is a “comparison made between one thing and another for the purpose of explanation or clarification.” Analogy, Oxford English Dictionary, Definition 3.b., http:// www.oed.com/view/Entry/7030Tredirected From=analogy#eid (last visited Aug. 26, 2016). In this case, I employed the fictional cheese guideline to help explain the problem of trying to apply a guideline, like the residual clause of the career-offender guideline, that is essentially unintelligible.
That brings me to my second point. Judge Pryor offers a vocabulary lesson in the differences between “vagueness” and “unintelligibility,” suggesting that although the career-offender guideline’s residual clause is vague, it is not unintelligible. See Pryor Op. at 1128.
But the problem with the career-offender guideline’s residual clause is that it is so vague as to be essentially unintelligible. Indeed, that’s exactly how Justice Scalia characterized the identical residual clause of the Armed Career Criminal Act (“ACCA”) — as “unintelligible.” See James v. United States, 550 U.S. 192, 230-31, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007) (Scalia, J., dissenting) (describing the residual clause of the ACCA as “an unintelligible criminal statute”), overruled by Johnson v. United States, — U.S. —, 135 S.Ct. 2551, 2563, 192 L.Ed.2d 569 (2015); see also Sykes v. United States, 564 U.S. 1, 33, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011) (Scalia, J., dissenting) (same). I think we can safely assume that Justice Scalia understood the meanings of “vague” and “unintelligible.” And his viewpoint that the identically phrased ACCA residual clause is “unintelligible” ultimately prevailed in Johnson,
II.
I now turn to Judge Pryor’s more general criticism of all of the Hunt/Clayton concurrences’ point that the residual clause of the career-offender guideline is unconstitutionally vague because it allows for arbitrary enforcement. First, Judge Pryor embarks on a half-hearted defense of the idea that arbitrary enforcement of the career-offender guideline’s residual clause may be avoided. Then, in apparent recognition of the problems with this position, he focuses his fire power on the idea that even if arbitrary enforcement is a problem, it is not a cognizable concern when it comes to the residual clause of the career-offender guideline. I respectfully disagree.
A.
For the reasons described in my Hunt/Clayton concurrences, arbitrary enforcement of the residual clause of the career-offender guideline represents a serious problem. In response to these concerns, Judge Pryor wishfully offers that “judges who must apply the residual clause of the career-offender guideline are not hopelessly adrift.” Pryor Op. at 1127. But the support for my colleague’s conclusion rests on quotations from Johnson which, when read in context, suggest the opposite. Judge Pryor explains,
Johnson held that the residual clause is vague in many of its applications, but it acknowledged that “there will be straightforward cases under the residual clause” and that “there is some conduct that clearly falls within the provision’s grasp.” 135 S.Ct, at 2560-61. Judges will continue to see examples of “obviously *1146 risky crimes” that “clearly pose a serious potential risk of physical injury to another.” Id.
Pryor Op. at 1126-27.
The actual sections from which Judge Pryor selectively picked his quotations leave a very different impression. They suggest that to the extent that a universe of “obviously risky crimes” exists, it is exceedingly small:
The Government and the dissent claim that there will be straightforward cases under the residual clause, because some crimes clearly pose a serious potential risk of physical injury to another.... True enough, though we think many of the cases the Government and the dissent deem easy turn out not to be so easy after all....
In all events, although statements in some of our opinions could be read to suggest otherwise, our holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls with the provision’s grasp. For instance, we have deemed a law prohibiting grocers from charging an “unjust or unreasonable rate” void for vagueness— even though charging someone a thousand dollars for a pound of sugar would surely be unjust and unreasonable. We have similarly deemed void for vagueness a law prohibiting people on sidewalks from “conducting] themselves in a manner annoying to persons passing by” — even though spitting in someone’s face would surely be annoying. These decisions refute any suggestion that the existence of some obviously risky crimes establishes the residual clause’s constitutionality.
Johnson, 135 S.Ct. at 2560-61 (bold emphasis added) (regular italics original) (citations omitted). So, at least in the Supreme Court’s view, we cannot take comfort in the idea that some significant number of crimes “clearly” fall within the bounds of the residual clause.
Nor, for this same reason, is Judge Pryor’s proposal that pre-Johnson caselaw “guide judges” in construing the residual clause satisfactory. See Pryor Op. at 1127. Judge Pryor notes that “federal circuit and district judges interpreted [the residual clause] thousands of times before Johnson[,] [and] [t]he Supreme Court did so four times as well.” Id. He suggests that this fact means that nothing is wrong with continuing to construe the residual clause like it was interpreted before the Supreme Court issued Johnson.
This argument buries its head in the pre-Johnson landscape’s sand. After Johnson, that argument is stranded in a legal desert, devoid of usable caselaw. As the Supreme Court explained in Johnson, it could revisit its earlier residual-clause decisions under stare decisis only because “experience with [the] application [of those earlier decisions] revealfed] that [they were] unworkable.” Johnson, 135 S.Ct. at 2562. If the Supreme Court found its own decisions and other pre-Johnson caselaw “unworkable,” it requires no leap of logic to conclude that the lower courts also should not rely on that body of law.
Judge Pryor seems to implicitly recognize this problem, proposing two solutions: first, he advises sentencing judges that they can just “vary from [the career-offender guideline] on policy grounds.” Pryor Op. at 1127. And second, he states that “the Sentencing Commission can and does repeal [“bad”] guidelines that are difficult to apply. In fact, they did so here.” Pryor Op. at 1127 (noting the repeal of the residual clause of the career-offender guideline, as of August 1, 2016).
But disregarding the effect of the career-offender guideline’s residual clause on *1147 policy grounds is no answer to the judge who has no policy qualm with the aim behind the career-offender guideline — that violent recidivists should receive substantially longer sentences than other defendants — and just wants to be able to ascertain properly whether, in a given case, the guideline should apply. What is that judge •to do?
Plus, in view of Judge Pryor’s second solution to the problems raised by the residual clause of the career-offender guideline — that the Sentencing Commission repealed it as of August 1, 2016 — my colleague’s advice is the legal equivalent of closing the stable door after the horse has bolted. No one reading his opinion now will be required to decide whether and how to apply the career-offender guideline’s residual clause at sentencing. And I am sure that Judge Pryor does not mean to suggest that appellate courts can decide to set aside a district court’s application of the career-offender guideline’s residual clause solely becausé of an appellate court’s policy disagreement with the guideline under which a defendant was sentenced.
Nor are Judge Pryor’s responses any answer to arbitrary enforcement in the many cases where sentencings occurred before the residual clause of the career-offender guideline was revoked. Indeed, although the Supreme Court issued Johnson on June 26, 2015, the residual clause remained in effect — and arbitrary enforcement continued to occur — for more than a year after that, until August 1, 2016. And it’s too late now for district courts that sentenced defendants during that period to take my colleague’s advice to vary downward from the Guidelines range based on a policy disagreement with the residual clause, even if they wanted to do so.[5]
B.
With no satisfactory answer to the problem of arbitrary enforcement, Judge Pryor turns his attention to arguing that arbitrary enforcement is not a cognizable reason to invalidate a guideline. He invokes two' major reasons why: (1) in Judge Pryor’s view, the vagueness doctrine applies to only laws that “regulate the primary conduct of private citizens,” Pryor Op. at 1119, and the residual clause of the career-offender guideline does not fall into that category; and (2) “judges [do not have a due-process right] to be free from interpreting vague laws in the exercise of judicial duty,” id. at 1127 (emphasis in original). Judge Pryor’s first contention is not borne out by the caselaw. And his second proceeds from an incorrect premise: of course, the Hunt/Clayton concurrers do not believe that judges have a due-process right to be free from interpreting vague laws. We do, however, believe that the public has a due-process right to be free from the necessarily arbitrary enforcement that judges must engage in when they must apply unconstitutionally vague laws.
1.
The central theme of Judge Pryor’s argument is that the vagueness doctrine-including its concern for avoiding arbitrary enforcement[1]-applies to only laws that “regulate the primary conduct of private citizens,” and the Sentencing Guidelines do not fall into that category. Pryor Op. at 1119. This “rule” — that the vagueness doctrine applies to only laws that “regulate the primary conduct of private citizens”— *1148 is a creation of Judge Pryor, based on his characterization of cases where the vagueness doctrine has been applied. The Supreme Court has not been so narrow in describing the types of laws to which the vagueness doctrine may apply. In fact, Supreme Court jurisprudence applying the vagueness doctrine defies my colleague’s characterization, of that body of caselaw.
First, the Supreme Court has never described the vagueness doctrine as applying solely to laws that regulate the primary conduct of private individuals. In Johnson, for example, the Supreme Court observed broadly that the vagueness doctrine invalidates a criminal law that is “so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standard-less that it invites arbitrary enforcement.” 135 S.Ct. at 2556 (emphasis added). Nothing more is required. So even if all existing Supreme Court jurisprudence on the vagueness doctrine could accurately be characterized as involving laws that regulate the primary conduct of private individuals — it can’t (more on this later) — a law that does not regulate the primary conduct of private individuals could still be unconstitutionally vague if it were “so standard-less that it invite[d] arbitrary enforcement.”
Second, in supporting his thesis that the vagueness doctrine applies to only laws that regulate the primary conduct of private citizens, Judge Pryor incorrectly characterizes Giaccio v. Pennsylvania, 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966) — a decision on which Judge Martin relied in her Clayton concurrence — as a case where the Supreme Court invalidated a law that regulated the primary conduct of private citizens. Judge Pryor describes the law at issue in Giaccio as allowing “[a] jury [to] award the costs [of an acquitted defendant’s prosecution] as a ‘sentence’ if it found that the defendant was ‘guilty of some misconduct less than the offense which is charged but nevertheless misconduct of some kind as a result of which he should be required to pay some penalty short of conviction.’” Pryor Op. at 1124 (quoting Giaccio, 382 U.S. at 403-04, 86 S.Ct. 518). But that description matches only part of what the Supreme Court held unconstitutionally vague in Giaccio: the judge’s jury instructions.
Significantly, the Supreme Court also ruled unconstitutionally vague the actual law itself that was at issue in Giaccio — and that law did not even arguably regulate primary conduct. See Giaccio, 382 U.S. at 402-03, 86 S.Ct 518. The law that the Supreme Court invalidated in Giaccio provided, in relevant part, only that “in all cases of acquittals by the petit jury on indictments for (offenses other than felonies), the jury trying the same shall determine, by their verdict, whether the county, or the prosecutor, or the defendant shall pay the costs.Id. at 400-01, 86 S.Ct. 518. It required no assessment of fault of any type on the part of the acquitted defendant.
The Supreme Court specifically invalidated that law as written — and without regard to how the jury was instructed in Giaccio’s case[6] — as unconstitutionally vague:
This ... Act contains no standards at all, nor does it place any conditions of any kind upon the . jury’s power to impose costs upon a defendant who has been found by the jury to be not guilty of a crime charged against him. The Act, without imposing a single condition, limi *1149 tation or contingency on a jury which has acquitted a defendant simply says the jurors ‘shall determine, by their verdict, whether ... the defendant shall pay the costs’ whereupon the trial judge is told he ‘shall forthwith pass sentence to that effect, and order him (defendant) to be committed to the jail of the county’ there to remain until he either pays or gives security for the costs.
Id. at 403, 86 S.Ct. 518. Judge Pryor concluded that the law at issue in Giaccio “plainly regulated primary conduct” because “it imposed a penalty (costs, and possibly jail time) on an acquitted defendant (a private individual) based on his out-of-court conduct (the misconduct that led to his prosecution).” Pryor Op. at 1124.
That description of the Giaccio law is simply incorrect. The law allowed the imposition of costs on an acquitted defendant, even if the jury concluded that the defendant had engaged in no misconduct that led to his prosecution. A law that imposes a penalty on a private individual, without respect to his out-of-court conduct, cannot qualify as a law that regulates the primary conduct of private individuals. And since the vagueness doctrine was held applicable to such a law in Giaccio, Judge Pryor’s thesis that the vagueness doctrine applies to only laws regulating primary conduct of private individuals cannot be correct.
2.
Judge Pryor also seems to think that the fact that judges do not enjoy a due-process right “to be free from interpreting vague laws in the exercise of their judicial duty” can somehow excuse a vague law like the residual clause of the career-offender guideline from constitutional compliance. See Pryor Op. at 1122-23. He argues that “the advisory guidelines are directed to judges, not private citizens, and we tolerate much more vagueness in laws that regulate government actors than we do in laws that regulate private citizens.” Id. at 1126. In support of his position, Judge Pryor relies on Mahler v. Eby, 264 U.S. 32, 40-41, 44 S.Ct. 283, 68 L.Ed. 549 (1924), and National Endowment for the Arts v. Finley, 524 U.S. 569, 118 S.Ct. 2168, 141 L.Ed.2d 500 (1998) (“NEA”).
Judge Pryor’s argument suffers from at least two problems. First, determination of whether the career-offender guideline’s residual clause applies to any given prior conviction is not discretionary. Nor is the requirement that every sentencing court begin the sentencing process by correctly calculating the defendant’s applicable Guidelines range. So Mahler and NEA, which involve vagueness challenges to' discretionary provisions, are not instructive. And second, Judge Pryor’s argument fails to recognize that, regardless of to whom the Guidelines and the ACCA are addressed, the residual clause of each requires judges to engage in the same analysis, meaning that the arbitrary-enforcement problems that plagued ACCA’s residual clause occur with equal force in the context of the career-offender guideline’s ' residual clause.[7]' I address each problem below in more detail.
First, Mahler and NEA are not relevant to the question of whether the vagueness doctrine applies to the residual clause of the career-offender guideline. Significantly, correct determination of whether the residual clause of the career-offender guideline applies to a defendant should not involve discretion of any kind. That’s be *1150 cause the residual clause is applied categorically, meaning that the sentencing court may not consider unique factual circumstances when determining whether the residual clause applies to a given prior conviction. If a specific crime qualifies as a violent crime under the residual clause, it qualifies for all defendants, regardless of the individual factual circumstances of a particular defendant’s prior conviction for that crime. So, if the residual clause were susceptible of application in the way it was intended, a district judge’s determination of whether the residual clause of the career-offender guideline applies in a specific case would be either objectively right or wrong. There would be no room for a range of correct answers.
That is simply not the case with the discretionary laws at issue in the cases Judge Pryor cites. In Mahler, for example, the Supreme Court rejected a vagueness challenge to the Secretary of Labor’s statutory power to expel aliens, observing that the power was discretionary. 264 U.S. at 40-41, 44 S.Ct. 283.
Similarly, the law at issue in NEA, 524 U.S. 569, 118 S.Ct, 2168, required the Chairperson of the National Endowment for the Arts to ensure that “artistic excellence and artistic merit are the criteria by which [grant] applications are judged, taking into consideration general standards of decency and respect .for the diverse beliefs and values of the American public.” Id. at 572, 118 S.Ct. 2168 (quoting 20 U.S.C. § 954(d)(1)). The Supreme Court described this law as “vestfing] the NEA with substantial discretion to award grants [by] identifying] only the broadest funding priorities....” Id. at 573, 118 S.Ct. 2168.
The laws at issue in Mahler and NEA, of course, are nothing like the residual clause of the career-offender, guideline, the application of which, I have noted, was intended to result in a single objectively correct answer to the question of whether a prior conviction qualified as a violent crime. Because Mahler and NEA involved laws that did not purport to establish standards whose application results in a single correct answer, they are not helpful in appraising the residual clause of the career-offender guideline for vagueness.
Second, Judge Pryor’s argument does not account for the fact that the residual clauses of both the career-offender guideline and the ACCA require judges to engage in the same analysis. Judge Pryor describes the Guidelines as “directed to judges, not private citizens,” Pryor Op. at 19, suggesting that the vagueness in the residual clause of the career-offender guideline is somehow more tolerable than the exact same vagueness in the ACCA. See id.
But regardless of at whom the Sentencing Guidelines are directed, judges engage in the very same analysis when they apply the career-offender guideline’s residual clause as they did when they applied the ACCA’s residual clause. In both cases, judges must construe the same thirteen words, and in both cases, judges must decide whether a prior conviction categorically — not individually with respect to the details of a given defendant’s prior crime — qualifies as a violent crime. That one definition appears in a guideline while the other is in a statute does not, as a practical matter, affect the way in which the courts go about analyzing whether the provision applies. And if the provision is too vague to avoid arbitrary enforcement under the ACCA, it is equally too vague to avoid arbitrary enforcement under the career-offender guideline.
III.
Finally, in a last-ditch effort to support his view that the vagueness doctrine *1151 should not apply to the residual clause of the career-offender guideline, Judge Pryor trots out the old parade of horribles. He predicts that most of the Sentencing Guidelines and the states’ sentencing guidelines will necessarily be invalidated if the vagueness doctrine can apply to the residual clause of the career-offender guideline, and down the road, the Sentencing Guidelines themselves, as a whole, will be ruled an unconstitutional violation of the Separation of Powers. Pryor Op. at 23-24.
But ruling that the residual clause of the career-offender guideline is unconstitutionally vague would not mean the end of the sentencing world as we know it. Unlike the residual clause of the career-offender guideline, most guidelines are not intended to be categorically applicable. They are designed instead to, as Judge Pryor has explained, “strike a ... balance between consistency, predictability, and flexibility.” Pryor Op. at 1129. As a result, most guidelines are supposed to and do allow the judge some discretion in determining the relevant facts of a particular defendant’s case in applying the. guideline. In fact, at times, correct application of a single guideline can result in different, correct answers. Again, that’s by design.
But the residual clause of the career-offender guideline is different. It is not intended to apply flexibly, depending on a particular defendant’s unique factual circumstances. Because it is meant to be applied categorically, it is supposed to yield an objectively correct answer about whether any particular crime qualifies under it as a violent crime, regardless of a defendant’s individual circumstances and a sentencing judge’s view of the record. That it cannot be applied in this way, despite the intended design of the guideline, is the source of the vagueness problem with the residual clause of the career-offender guideline. Indeed, the Supreme Court held ACCA’s identical residual clause unconstitutionally vague, in significant part, because of the law’s failed categorical nature. See Welch v. United States, — U.S. —, 136 S.Ct. 1257, 1262, 194 L.Ed.2d 387 (2016).
Alowing a successful vagueness challenge to a guideline that is intended to apply categorically but is incapable of actually working that way does not set a precedent for holding guidelines that are designed to apply with some flexibility and discretion — as opposed to categorically— vague. As I have previously noted, non-categorical guidelines “guide judicial discretion,” Pryor Op. at 1119, in a way that is substantively and materially different than categorical guidelines do. Whereas categorical guidelines should yield but a single correct answer applicable to every case without regard to an individual defendant’s circumstances or a judge’s view of the record, non-categorical guidelines should not. So an inability to categorically apply a guideline that is intended to be categorically applied necessarily results in arbitrary enforcement every time it is applied. As a result, it is vague in a way that a non-categorical guideline never can be.
Similarly, invalidating the career-offender guideline’s residual clause as unconstitutionally vague has no implications for 18 U.S.C. § 3553(a) standards, see Pryor Op. at 1126-27, since they also do not apply categorically. Rather, by design, judges consider the individual circumstances of a given defendant’s case and are expected to exercise their discretion in applying the § 3553(a) standards. See United States v. Hurlburt, No. 14-3611, 2016 WL 4506717, at *7 (7th Cir. Aug. 29, 2016) (en banc) (“Johnson itself specially addressed this kind of objection [that holding the residual clause unconstitutional will open the floodgates to vagueness challenges to other sen- *1152 fencing provisions] and rejected it. The Court explained at length that the vagueness defect in the ACCA’s residual clause is not just its use of indeterminate language; it’s that the clause uses indeterminate language and must be applied categorically, without regard to real-world facts.”).
Nor does declaring the residual clause of the career-offender guideline unconstitutionally vague have any implications for the constitutionality of the Sentencing Guidelines under the Separation of Powers. The reason that the residual clause of the career-offender guideline must be held unconstitutionally vague is not that the freestanding guideline results by itself in arbitrary enforcement — a circumstance that might cause Separation-of-Powers problems if it existed; it is instead because under 18 U.S.C. § 3553(a), “district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.” Gall v. United States, 552 U.S. 38, 50 & n.6, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007) (emphasis added).
As the Supi-eme Court has recognized, by congressional mandate in the form of § 3553(a), the Sentencing Guidelines “anchor .,. the district court’s discretion.”[8] Molina-Martinez v. United States, — U.S. —, 136 S.Ct. 1338, 1345, 194 L.Ed.2d 444 (2016). And it is that same congressional mandate of § 3553(a) that causes a district court’s improper calculation of a defendant’s Guidelines range to constitute a “significant procedural error,” id. at 1346 (quoting Gall, 552 U.S. at 51, 128 S.Ct; 586) (quotation marks omitted)— so “particularly serious,” id. that the error generally qualifies in its own right as having “affected the defendant’s substantial rights.” Id. Because the unconstitutional vagueness of the residual clause of the career-offender guideline results from the congressional mandate in § 3553(a) that requires courts to first correctly calculate the Guidelines range — not from any force that the freestanding career-offender guideline has in and of itself, allowing the residual clause of the career-offender guideline to be stricken as unconstitutionally vague does not implicate the Separation of Powers.
IY.
These issues are important ones. They potentially impact numerous defendants. So I would have granted en banc rehearing when the poll was initially taken in March 2016.
APPENDIX
ROSENBAUM, Circuit Judge, concurring, joined by WILSON and JILL PRYOR, Circuit Judges:
Imagine a sentencing guideline that read, “A defendant is a career offender if ‘[p]uddles do not ask for why not? It is cheese! Breath and wind. It is cheese.’” Boston Legal, “Word Salad Days” (2006), http://www.imdb.com/title/tt0770843/quotes (last visited Apr. 28, 2016). Now imagine *1153 that based on the Guidelines range that that indecipherable language required, a district court sentenced a defendant to twice as much time as it otherwise would have. How could the sentencing court know that the guideline applied? How could the reviewing court know that the correct Guidelines calculation included an enhancement under that guideline? Surely doubling a defendant’s sentence based on nonsense would violate due process. But in United States v. Matehett, 802 F.3d 1185 (11th Cir. 2015), we allowed defendants to continue to be sentenced to much more severe sentences than they would otherwise receive, based on the residual clause of the career-offender guideline, a guideline that the Supreme Court has found hardly more scrutable than the hypothetical one above.
No doubt criminal defendants do not have a due-process right to a sentence within a particular Sentencing Guidelines range. But Congress can, and essentially has, required courts to begin the sentencing process by correctly calculating the Guidelines range. The question here is whéther, when the Supreme Court strikes language from a statute because it is unconstitutionally vague language and that same language also appears in a guideline, we are constitutionally able to continue to apply that language in the sentencing process that Congress has mandated. The answer, unlike the challenged part of the career-offender guideline, is clear: we are not.
I concur in Sections I.A. and II of Judge Wilson’s well-reasoned concurrence. I agree that the Supreme Court’s decision in Johnson v. United States, 576 U.S. —, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015), holding the Armed Career Criminal Act’s (“ACCA”) residual clause unconstitutionally vague renders the exact same language in the Sentencing Guidelines unconstitutional as well. So while we are bound by Matehett in deciding Hunt’s Guidelines claim, I write separately to explain why I believe that Matehett was incorrectly decided.
I.
In Matehett, 802 F.3d 1185, the panel reached the opposite conclusion because it held that the vagueness doctrine does not apply to the Sentencing Guidelines. 802 F.3d at 1193-95, To reach that result, the panel first described the vagueness doctrine as “resting] on [a] lack of notice.” Id. at 1194 (quoting Maynard v. Cartwright, 486 U.S. 356, 361, 108 S.Ct. 1853, 1857, 100 L.Ed.2d 372 (1988)). Then, the panel construed Irizarry v. United States, 553 U.S. 708, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008), as precluding due-process challenges to, essentially, anything having to do with sentencing under the Guidelines, based on the Supreme Court’s remark that that “[a]ny expectation subject to due process protection ... that a criminal defendant would receive a sentence within the presumptively applicable Guidelines range did not survive our decision in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which invalidated the mandatory features of the Guidelines.” Matchett, 802 F.3d at 1194 (quoting Irizarry, 553 U.S. at 713, 128 S.Ct. at 2202). Finally, the panel quoted the Eighth Circuit’s decision in United States v. Wivell, 893 F.2d 156, 160 (8th Cir. 1990), for the proposition that “[bjecause there is no constitutional right' to sentencing guidelines ... the limitations the Guidelines place on a judge’s discretion cannot violate a defendant’s right to due process by reason of being vague.” Matchett, 802 F.3d at 1194-95 (quoting Wivell, 893 F.2d at 160).
*1154 A.
The problem with the first part of the panel’s analysis — that the vagueness doctrine “rest[s] on [a] lack of notice” — is that it is incomplete. The vagueness doctrine also protects against arbitrary enforcement by judges. Indeed, in Johnson itself the Supreme Court held that the ACCA equivalent of the 13 words at issue here violated due process because it “both denies fair notice to defendants and invites arbitrary enforcement by judges.” Johnson, 135 S.Ct. at 2557 (emphasis added).
B.
As for the second part of the panel’s analysis — that Irizarry precludes due-process challenges to all forms of sentencing error under the Guidelines — I respectfully disagree. In Irizarry, under the advisory Guidelines, a defendant was sentenced above the correctly calculated Guidelines range. 553 U.S. at 712, 128 S.Ct. at 2201. He asserted that his due-process rights had been violated because the sentencing court varied upwards from the Guidelines range without providing him with prior notice. See id. The Supreme Court rejected his argument, explaining that under the advisory Guidelines, “neither the Government nor the defendant may place the same degree of reliance on the type of ‘expectancy’ [of a given sentence] that gave rise to a special need for notice [when the Guidelines were mandatory and the sentencing court departed from them].” Id. 553 U.S. at 713-14, 128 S.Ct. at 2202.
Put simply, Irizarry stands for only the proposition that a defendant has no due-process interest in receiving a sentence within the Guidelines range. But Irizarry says nothing about whether a defendant has a due-process right to a correct and fair sentencing process under the Sentencing Guidelines. And while the Supreme Court has not expressly spoken to such a right, the Court’s recent decisions strongly indicate that the right exists.
For starters, in Molina-Martinez v. United States, 578 U.S. —, 136 S.Ct. 1338, 194 L.Ed.2d 444 (2016), the Supreme Court recently explained that a district court that “improperly calculates]” a defendant’s Guidelines range makes a “significant procedural error,” id. at 1346 (quoting Gall v. United States, 552 U.S. 38, 51, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007)) (quotation marks omitted) — so “particularly serious,” id. in fact, that the error generally qualifies in its own right as having “affected the defendant’s substantial rights.” Id.[1]
And that is not surprising, given that the Supreme Court has established that a correct and fan- sentencing process necessarily begins with the correct calculation of the Guidelines range. Gall v. United States, 552 U.S. 38, 50 & n.6, 128 S.Ct. 586, 596 & n.6, 169 L.Ed.2d 445 (2007). Indeed, the Supreme Court has instructed that under 18 U.S.C. § 3553(a), “district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.” Id. at 50 n.6, 128 S.Ct. at 596 n.6 (emphasis added); see Peugh v. United States, 569 U.S. —, 133 S.Ct. 2072, 2083, 186 L.Ed.2d 84 (2013) (same). The correct Guidelines calculation “anchor[s] both the district court’s [sentencing] discretion and the appellate review process.” Peugh, 133 S.Ct. at 2087.
*1155 In other words, the Supreme Court has acknowledged that Congress has effectively legislated the requirement that a sentencing court start the sentencing process by first correctly calculating the Guidelines range. That makes § 3553(a) a “statute[ specifying the procedure for] fixing sentences.” See Johnson, 135 S.Ct. at 2556-57 (holding that the vagueness doctrine applies to statutes fixing sentences). So to the extent that, as a part of the statutorily mandated sentencing process, § 3553(a) requires courts in calculating the Guidelines range to use a guideline that is “so standardless that it invites arbitrary enforcement,” the guideline must be struck down. See id. Failure to do so would render the sentencing process that § 3553(a) requires — determining the correct calculation of the Guidelines range — violative of due process because no court could reliably ascertain the correct calculation of the Guidelines range.
That is exactly the problem that the challenged language of the career-offender guideline presents.' How can a sentencing court correctly calculate the Guidelines range when it is forced to apply the “hopelessly] indetermina[te]” language of the career-offender guideline? Johnson, 135 S.Ct. at 2448. Courts had “trouble making sense” of the very same words when they tried to apply them under the ACCA’s residual clause. Id. at 2559-60. The Supreme Court observed that “[n]ine years’ experience trying to derive meaning from the residual clause convince[d it] that [it] ha[d] embarked upon a failed enterprise.” Id. at 2560. This “ ‘black hole of confusion and uncertainty[1] that frustrates any effort to impart ‘some sense of order and- direction,’ ” id. at 2562 (quoting United States v. Vann, 660 F.3d 771, 787 (4th Cir. 2011) (Agee, J., concurring)), does not somehow magically become clearer or more meaningful because the words appear in the guideline, rather than in the ACCA.
Because of this muddle, a sentencing court cannot ascertain whether the challenged part of the career-offender guideline even applies when the guideline is raised, so the court necessarily cannot correctly calculate the Sentencing Guidelines range. As a result, the sentencing court cannot comply with the sentencing process’s virtual statutory requirement that the sentencing court first correctly calculate the applicable Guidelines range.
And, as Judge Wilson notes, the confusion only grows on appeal. Determining whether a sentence imposed by a district court was procedurally reasonable requires appellate courts to first ascertain whether the district court correctly calculated the applicable Guideline range. But we are no more skilled in applying “hopelessly] indeterminate]” language than district courts.
C.
Finally, with regard to the third part of the Matchett panel’s analysis — that the Sentencing Guidelines cannot be challenged as vague because no constitutional right to sentencing guidelines exists — I again respectfully disagree. True, “legislatures remain free to decide how much discretion in sentencing should be reposed in the judge or jury in noncapital cases.” Lockett v. Ohio, 438 U.S. 586, 603, 98 S.Ct. 2954, 2964, 57 L.Ed.2d 973 (1978). But legislatures cannot, as Matchett would apparently hold, cabin the sentencing discretion of judges by mandating that they calculate a defendant’s sentence using unconstitutionally vague language.
This would be another ease entirely if sentencing judges could choose to wholly disregard the unconstitutionally vague career-offender guideline in calculating sen *1156 tences. They cannot. Instead, district courts must begin the sentencing process by correctly calculating a defendant’s Guidelines range. Peugh, 133 S.Ct. at 2083, Under Matchett, that means that Congress has essentially required district courts to apply unconstitutionally vague language in sentencing defendants. But it could not do that. Due process may not require sentencing guidelines, but it does prohibit Congress from requiring judges to apply unconstitutionally vague language in correctly calculating a defendant’s sentence under any guidelines it chooses to enact.
II.
At bottom, statutorily, courts are required to begin every sentencing by correctly calculating the Guidelines range. Yet the Supreme Court has recognized that courts cannot reliably know whether the challenged language of the career-offender Guideline applies in any given case. As a result, they cannot possibly know whether a correct calculation of the Guidelines range should or should not include such an enhancement. But in Matchett, we nonetheless. required sentencing courts to impose the enhancement and ourselves to uphold it, anyway. Trying to divine meaning from the word salad that is the challenged portion of the career-offender guideline guarantees an arbitrary and unfair sentencing process in violation of due process. For this reason, I respectfully disagree with our holding in Matchett.

. My concurrences in Hunt and Clayton are, for the most part, the same. For convenience, I attach a copy of my concurrence in Hunt in the Appendix to my dissent.

. See Pryor Op. at 1128 (arguing that my alleged "concern” that the Sentencing Commission might issue a "nonsensical guidelines about ‘cheese' ” is "unfounded” because '-‘the members of the United States Sentencing Commission take their oaths seriously and strive to craft guidelines that 'provide certainly and fairness in meeting the purposes of sentencing,’ 28 U.S.C. § 991(b)(1)(B). We know of no instance in which the Commission has intentionally or inadvertently constructed a ‘word salad.’ ”). To be clear, I have never ■ doubted the good intentions of the Sentencing Commission. In fact, I have nothing but the utmost respect and appreciation for die hours upon hours that members and former members of the Commission — including Judges Pryor and Julie Carnes — devote and have devoted to trying to develop the best possible guidelines they can. It is also certainly understandable why the Commission would have adopted the wording of the residual clause of the career-offender guideline — they had the residual clause of the congressionally enacted Armed Career Criminal Act as a model. But the Commissioners' good intentions, of • course, do not somehow insulate the Sentencing Guidelines from legal critique. And criticizing a guideline is not the same thing as impugning the intentions of the Sentencing Commission.

, In fact, I would be surprised if the Sentencing Commission had reason to issue a guideline about cheese at all. After all, the moon does not fall within the Sentencing Commission's jurisdiction. See Robert Nemiroff & Jerry Bonnell, Hubble Resolves Expiration Date for Green Cheese Moon, Astronomy Picture of the Day (Apr. 1, 2002), http://www.phys.ncku, edu.tw/-astrolab/mirrors/apod_e/ap020401. html ("The popular ‘Moon is made of Green Cheese’ myth can be traced,back almost 500 years. It has been used historically in context to indicate a claim so clearly false that no one ... will believe it.”); see also Treaty on Principles Governing the Activities of States in the Exploration and Use of Outer Space, Including the Moon and Other Celestial Bodies art. I, Jan, 27, 1967, 18 U.S.T. 2410 ("The exploration and use of outer space, including the moon and other celestial bodies, shall be carried out for the benefit and in the interests of all countries, irrespective of their degree of economic or scientific development, and shall be the province of all mankind.”).

. Now, that is a sentence I never imagined I would write in an opinion.

. Even if they could, I note that "closer [appellate] review may be in order when the sentencing judge varies from the Guidelines based solely” on a policy disagreement with the apparently applicable guidelines. See Kimbrough v. United States, 552 U.S. 85, 109, 128 S.Ct. 558, 169 L.Ed.2d 481 (2007).

. The Supreme Court separately concluded that even as limited by the judge’s jury instructions, the statute was unconstitutionally vague. See Giaccio, 382 U.S. at 403, 86 S.Ct. 518.

. The one difference is that a judge applying the guideline must determine whether two predicate convictions exist, while a judge applying the ACCA must determine whether three are present.

. Much as my colleague would like to ignore the inconvenient fact that the Guidelines continue to hold great sway over sentencing courts, see Pryor Op. at 1123 ("On average, the odds of receiving a sentence within the guideline range are worse than a coin flip”), that is not the way the Supreme Court sees things. Just a few months ago, the Court described the Sentencing Commission's statistics as "demonstrating] the real and pervasive effect the Guidelines have on sentencing,” Molina-Martinez, 136 S.Ct. at 1346, In support of this point, the Supreme Court noted that district courts have "imposed above- or below-Guidelines sentences absent a Government motion” in less than 20% of cases since 2007. Molina-Martinez, 136 S.Ct. at 1345. Judge Pryor’s citation of statistics fails to account for the government's role in sentencing.

. If the Guidelines calculation error in Molina-Martinez that resulted in a difference of 7 months’ imprisonment on the low end of the Guidelines range constitutes a "significant procedural error,” so too must an error in the application of the career-offender Guideline, which can double and sometimes even triple the otherwise-applicable Guidelines range.